The Lancashire Insurance Company et al., Appellants, *v.* Robert A. Maxwell, Superintendent of the Insurance Department of the State of New York, Respondent.

Under the provision of the act of 1862 (§ 23, Chap. 367, Laws of 1862), requiring a foreign insurance company, before doing business in this state, to "deposit with the superintendent of the insurance department, for the benefit and security of policy holders residing in the United States, a sum not less than two hundred thousand dollars in stocks," the sum so deposited becomes a trust fund for the benefit of the policy holders named; when a greater sum than the minimum specified is deposited it is to be held by said superintendent on the same terms as the $200,000, and the excess over that amount cannot be withdrawn until all the conditions of the trust have been complied with.

The act of 1871 (Chap. 888, Laws of 1871), which provides that the capital of a foreign insurance company shall, for all the purposes of that act and of the general insurance laws of the state, be the aggregate value of such sums or securities, as such company shall have on deposit in the insurance or other departments of this state and the other states for the benefit of policy holders, etc., and that no foreign insurance company shall take any one risk for any greater amount in proportion to its capital, as determined by the provisions of the act, than companies organized under our own laws, does not change the trust character of such deposits made here; it simply furnishes a standard for measuring the percentage of risk, and while under the act, the deposit of a company in this state may be regarded for certain purposes as capital, it is at all times impressed with the special trust, and there is no power in the court to authorize or direct its withdrawal upon any terms whatever.

Reported below, 61 Hun, 360.

(Argued February 1, 1892; decided March 1, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 10, 1890, which reversed a judgment in favor of plaintiff entered upon an order of the Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George de Forest Lord* for appellants. This is a case in which "one or more" persons may be made defendants, so as to represent and conclude the rights of a whole class, under section 448 of the Code. (*Luling* v. *A. M. Ins. Co.*, 43 Barb.

510.)   Plaintiffs are entitled to the relief asked for, provided the fund in question can properly be dealt with in such manner and provided this court has power to direct the transfer. (Laws of 1871, chap. 888.)   There is no legal objection to the making of the proposed transfer, and the contention of the defendant Maxwell that this fund should not be dealt with as asked for by the plaintiffs, because that would change, either the beneficiaries for whom, or the trusts under which the fund is held, is unsound. (Laws of 1853, chap. 494, § 23; Laws of 1862, chap. 367, § 4; *Saunders* v. *Evans*, L. R. [8 H. L.] 728; *Lord* v. *Mayor, etc.*, 17 Wend. 285; 18 id. 126; *Ruggles* v. *Chapman*, 59 N. Y. 165; Laws of 1859, chap. 366; Laws of 1862, chap. 367; Laws of 1871, chap. 888, § 1.)   As to the surplus of this fund held by the defendant Maxwell, over $200,000, he is not a compulsory trustee, but a trustee voluntarily chosen by the plaintiff company, and the funds thus voluntarily placed in his hands are subject to being transferred by the court, upon a proper case made, into the hands of other suitable and competent trustees. (Laws of 1853, chap. 466, § 23; Laws of 1862, chap. 367, § 5.)

*S. W. Rosendale, Attorney-General*, for respondent.   It appears upon the face of the complaint that the defendant Maxwell, as superintendent of insurance, is a public trustee, holding the securities in question in his official capacity and by virtue of a statutory trust created for the benefit and security of the policy holders of the plaintiff company in the United States, and the court has no power to divest him of the trust and cause the securities to be transferred to trustees selected by the company, or to change or modify the terms of the trust. (Laws of 1853, chap. 466, § 23; Laws of 1871, chap. 888, § 2; *Ruggles* v. *Chapman*, 59 N. Y. 163; 64 id. 557; *G. L. M. Ins. Co.*, 13 Hun, 115; 74 N. Y. 617; *Atty.-Gen.* v. *N. A. L. Ins. Co.*, 80 id. 152; 85 id. 485.)   The existence of these deposits in the hands of the superintendent of insurance has presumably been the basis of his official action in granting a renewal from year to year to the plaintiff com-

pany of a certificate of authority to do business in this state, and the plaintiff, having had the benefit of such authority, cannot be permitted to withdraw any part of the securities without the assent of the superintendent. (*Doyle* v. *C. Ins. Co.,* 94 U. S. 535–542; *P. F. Assn.* v. *New York,* 119 id. 110–118.) Unless the plaintiff company has a clear legal right to with-draw these securities and place them in the hands of private trustees, the action of the superintendent in refusing to allow them to be withdrawn is an exercise of official discretion which cannot be controlled by the courts. (*Adams* v. *Ives,* 63 N. Y. 650; *People* v. *Canal Board,* 55 id. 394.) Chapter 888 of the Laws of 1871, section 2, does not authorize a transfer of the securities held by the superintendent in trust for the benefit of policy holders to trustees selected by the company. (3 R. S. [8th ed.] 1618, 1619, § 2.) There is a defect of parties defendant to this action in that the policy holders of the com-pany have not been joined as defendants therein. (*Conkling* v. *Davies,* 53 How. Pr. 409; *McDonald* v. *Frazer,* 49 id. 320; *Rogers* v. *Rogers,* 3 Paige, 379; Story's Eq. Pl. §§ 72, 81, 96; *Moore* v. *Hegeman,* 72 N. Y. 376; *Pell* v. *Brown,* 2 Bro. Ch. 276; *Reid* v. *The Evergreens,* 21 How. Pr. 319; *Gray* v. *Schenck,* 4 N. Y. 460; *Long* v. *Younge,* 2 Sim. 369; *Small* v. *Atwood,* Younge, 407, 457, 458, 459.)

PECKHAM, J. Stated briefly the plaintiff, the insurance company, desires to withdraw from the custody and control of the defendant, the superintendent of insurance of this state, all the funds which such company has heretofore deposited with the defendant, over and above the sum of $200,000, which is the minimum amount provided for by law to be deposited with such superintendent by a foreign insurance company as a condition of doing business within this state. The question is primarily one of power on the part of the court to direct or permit such withdrawal upon any terms or conditions what-ever. And that question depends upon the character in which the defendant received the deposit of such funds or securities over the amount of $200,000.

In construing the statutes relating to deposits with the superintendent, we agree with the General Term herein. The importance of the question to the plaintiff, which its learned counsel has stated, has induced us to look with extreme care into the course of legislation upon this subject, but we are wholly unable to come to any other conclusion than that arrived at by the General Term of the Supreme Court. The statute, chapter 367 of the Laws of 1862 (§ 23, at page 618), provides that an insurance company incorporated by or organized under the laws of any foreign government, shall "deposit with the superintendent of the insurance department for the benefit and security of policy holders residing in the United States, a sum not less than two hundred thousand dollars in stocks," etc. Prior to the passage of this act the legislature had provided for the doing of business within this state by a foreign insurance company and had enacted that before any of its agents should be permitted to do business for it in this state evidence should be furnished to the comptroller that such company had invested in securities of a similar character to that required of home companies, an amount equal to the capital required from such home companies by section 6 of the general act, and that such securities and investments were held in trust by citizens of the United States for the benefit and security of such as might effect insurance with such agent. (Chap. 466 of the Laws of 1853, § 23.)

The act of 1862 substituted an official trustee, viz. : the superintendent of the insurance department for the individual trustees with whom deposits had been made theretofore "for the benefit and security of such as may effect insurance," etc. The deposit under the act of 1862 was made with the official trustee "for the benefit and security of the policy holders in the United States." The act provided that the deposit should be "a sum not less than $200,000 in stocks of the United States or of the state of New York   *   *   *."

Although the minimum sum to be deposited under this act with the superintendent of insurance equaled the minimum amount of capital which home companies organized to do busi-

ness in the county of New York or Kings were permitted to have, yet the sum so deposited was not technically the capital of the company making the deposit. It was a trust fund placed in the hands of an official trustee for the benefit of policy holders in the United States. It was a special security to such persons, and although it might have been taken from the capital of the company, yet when deposited with the official trustee under our own statute, it became a trust fund for specially-named policy holders to which they could resort by virtue of the deposit, and not because it was capital in any sense. The learned counsel for the plaintiff does not claim that the minimum amount of $200,000, deposited under the provisions of this statute could be withdrawn from the possession of the superintendent until all the conditions of the trust had been complied with, but he claims that inasmuch as the statute names a minimum amount, that any sum deposited with the superintendent above such minimum amount may be withdrawn under proper provisions made as to security by a court of equity.

We think not. Although at least $200,000 must be deposited as a condition of the license to the foreign company to do business in this state, yet we are entirely clear that any greater sum deposited with the superintendent as security is deposited under the terms of the statute, and that both as to the superintendent and the company, the rights in the fund so deposited over the $200,000 are precisely the same as they are in regard to the last-named sum. The whole deposit constitutes but one sum and the whole is made in trust for the benefit of the same policy holders and is in fact and law one trust fund.

I cannot see any importance, upon the question here involved, to be attached to the fact that the statute fixes the minimum sum of such deposit. There is no prohibition as to making a larger deposit and there can be no claim successfully set up that the deposit made by this company above the $200,000 was made under any other statute than that which provided for a deposit of at least the above-named sum. The implication is conclusive that any sum greater than the minimum,

which might be deposited, would be held by the official trustee upon the same terms precisely as the $200,000. I see no special force in the fact, conceding its existence, that the fund thus deposited might be liable for the other debts of the company after the policy holders had been satisfied. The primary persons for whose benefit the fund is deposited are the policy holders, and what becomes of the fund after it has satisfied those for whose benefit it was primarily liable is not important to them. The superintendent is not a trustee for any others than those named in the statute.

An argument in favor of the right to make this order on the part of the court is sought to be maintained upon the assumption that the legislature has itself made this fund a part of the capital, the American capital, as it is called, of the company, and hence liable for all the debts of the company. Being so liable, the argument is the trustee can be changed from a public officer to an individual by order of the court. The correctness of this latter claim is not obvious. I do not, however, think the character of this fund as a trust fund under the act of 1862, has been changed by subsequent legislation. The act of 1862 added to section 6 a provision that no fire company transacting business in the state should take any one risk to an amount exceeding ten per cent of its paid-up capital. For nine years this provision stood, although a foreign corporation with a large paid-up capital in the foreign state might properly have claimed that the limitation as to risks must be bounded by its actual paid-up capital and not by the sum on deposit with the superintendent of insurance, which might be no more than $200,000. The act of 1871 (Chap. 888) was, therefore, passed, wherein it was enacted that the capital of a foreign insurance company should, *for all the purposes of that act and of the general insurance laws of the state*, "be the aggregate value of such sums or securities as such company shall have on deposit in the insurance or other departments of this state and of the other states of the United States for the benefit of policy holders in any of such states or in the United States," etc., and the act also provided for treating as capital

bonds and mortgages and other securities properly taken, as therein set forth.

The act also provided that no foreign insurance company should take any one risk for any greater amount in proportion to its capital as determined by the provisions of the act, than companies organized under our own laws. In this way the limitation as to capital was applied to foreign companies and they could no longer claim to proportion any one of their risks to the paid-up capital they might have, but in making the proportion, that part only of the funds of the foreign company deposited or invested as pointed out was to be for that purpose or for any purpose of the general insurance laws of the state regarded as capital. The act furnished a standard for measuring the percentage of risk. As the risk was one of insurance and the party insured thereby became a policy holder, it was very proper to regard as to him, for the purpose of the act, the deposit in the hands of the superintendent as capital. But there is no mention in any section of the statute of any intention to change the character of this trust fund thus deposited with the superintendent. No such intention can be inferred from any of its provisions.

Although under the act of 1871, it may be regarded as in the light of capital for certain purposes, yet it is at all times capital impressed with the special trust provided for in the statute, and there is no power in the court to authorize or direct its withdrawal from the official trustee upon any terms or conditions whatever. (*Ruggles* v. *Chapman*, 59 N. Y. 163; *People, etc.,* v. *Chapman*, 64 id. 557; *In re Guardian Ins. Co.,* 13 Hun, 115; *Id.* 74 N. Y. 617.)

This official trustee is a statutory and not a voluntary trustee as to the whole fund which comes into his hands. He receives it as superintendent and transfers it to his successor, and whatever the liability of the state regarding the $200,000 (as to which we say nothing), it is not other or different in regard to the amount deposited according to the statute above that sum. It may be that legislation providing for the withdawal of the amount over the minimum sum, upon the terms and con-

ditions set out in the Special Term order would be valid and proper but that is matter for the legislature and not for this court.

We have carefully examined the case with a desire to see if relief might be given the plaintiff, but we think we are powerless.

For these reasons as well as for those given by the General Term, we think the defendant must succeed on this appeal.

The judgment of the General Term reversing the judgment of the Special Term should be affirmed with costs.

All concur, except MAYNARD, J., not sitting.

Judgment affirmed.