MARCUS P. HAYNE v. METROPOLITAN TRUST COMPANY and Others.[1]

January 19, 1897.

Nos. 10,244, 10,245—(208, 209).

**Insurance Company—Exchange of Securities Deposited under G. S. 1894, § 3332—Action by Receiver.**

    An insurance company assigned to and deposited with the insurance commissioner certain securities in trust for the benefit of its policy holders, pursuant to G. S. 1894, § 3332. Subsequently the insurance company and the defendant trust company made an arrangement by which the former assigned to the latter these securities in exchange for other securities. The two companies then procured from the insurance commissioner a retransfer and surrender of the securities deposited with him, the insurance company substituting in place of them (but of much less value) part of the securities which it had received from the trust company, and the trust com-

[1] Reported in 69 N. W. 916.

pany depositing with the state auditor, in trust for itself, the securities thus surrendered by the insurance commissioner. The surrender by the insurance commissioner of the securities deposited with him, and the substitution of others in their place, was without the knowledge of the policy holders, and without the knowledge or approval of the state treasurer. The trust company had notice of these facts. In an action brought in behalf of all the policy holders of the insurance company for the purpose of administering and distributing the proceeds of all securities deposited with the insurance commissioner in trust for their benefit, the plaintiff was appointed receiver, with power to take possession of all such securities, and to bring such actions as might be necessary for that purpose. He then brought his action against the trust company and the state auditor to compel the delivery to him of the securities withdrawn from the insurance commissioner, and tendering a return of all the securities given by the trust company in exchange for them, which had been deposited by the insurance company with the insurance commissioner, but not those not thus deposited. but retained, by the insurance company. *Held,* that the insurance commissioner has no authority to transfer, surrender, or exchange securities deposited with him in trust for policy holders without the approval of the state treasurer in the cases and in the manner provided by G. S. 1894, § 3155; and that the attempted transfer and surrender by him was not merely voidable, but absolutely void. Hence, that this action by the receiver is not one for a rescission, and that the rules governing such actions have no application. He is not required to make good to the trust company that part of the securities given by it in exchange which was retained by the insurance company, and has never come into his hands. All that is required of him is to do equity by returning those which have come into his possession from the insurance commissioner.

### Same—Excess over Minimum Deposit.

The fact that the amount of the securities deposited by the insurance company in trust for the benefit of policy holders exceeded the minimum deposit required by statute, is not material. The excess was as fully bound by the trust as the balance.

### Credit Insurance.

Laws 1881, c. 123 (G. S. 1894, §§ 3331–3337), authorizes the business of insurance against losses resulting from the insolvency of those to whom goods are sold on credit.

### Jurisdiction of Court.

The court had jurisdiction of the state auditor as respects the control and disposition of this trust fund for the benefit of policy holders in which the state, as such, has no interest. Former decisions as to the control of the courts over the official acts of executive officers of the state government distinguished.

Separate appeals by plaintiff from an order of the district court for Hennepin county, Russell, J., sustaining the demurrer of defendant Dunn to the complaint, and by defendant Metropolitan Trust Company from an order overruling its demurrer to the complaint. Reversed as to plaintiff and affirmed as to the trust company.

*V. J. Welch* and *C. J. Rockwood*, for plaintiff appellant.

*Wilson & Van Derlip*, for appellant Trust Co.

*H. W. Childs*, Attorney General, for respondent Dunn.

MITCHELL, J.   Two demurrers to the complaint were interposed, —one by the Metropolitan Trust Company (which we shall hereafter call the "Trust Company") on the ground that it did not state a cause of action; and the other by the state auditor, Dunn, on the same ground, and on the further ground that the court had no jurisdiction of him.   The court overruled the demurrer of the trust company, and sustained that of Dunn on the second ground.

The essential allegations of the complaint, stated briefly and according to their legal purport, were as follows:   The National Credit Insurance Company (which we shall hereafter call the "Insurance Company") was a domestic corporation engaged in the business of insuring against losses resulting from the insolvency of those to whom the insured had sold goods on credit.   In February, 1893, pursuant to G. S. 1894, § 3332, it assigned to and deposited with the insurance commissioner, in trust for the benefit of its policy holders, a note and mortgage executed by one Maxcy, for the amount and of the actual value of $114,000.   Subsequently, during the years 1893, 1894, 1895, it issued a large number of policies, upon which it was at the time of its failure, in September, 1895, and still is, indebted to the holders over $125,000.

In January, 1895, without the knowledge of the policy holders, the insurance company and the trust company (which had knowledge of all the foregoing facts) made and carried into effect an agreement by which the former assigned to the latter the Maxcy note and mortgage in exchange for notes and other securities of the face value of $104,000, but of a much less actual value, which the trust company assigned to the insurance company.   At the same time, and as part of the same transaction, the two companies withdrew the Maxcy note and mortgage from the insurance commissioner, and

the insurance company substituted in place thereof a part of the securities which it had received from the trust company, and, in addition thereto, an amount of the capital stock of the latter company which it had issued to the former. These substituted securities were of the face value of about $104,000, but were in fact of a much less actual value. The remainder of the securities received by the insurance company in this exchange (of the face value of $18,000) were retained by it, and not deposited with the insurance commissioner. The state treasurer never countersigned or approved of the reassignment and surrender of the Maxcy note and mortgage, or the substitution of other securities in place of them, and never consented to, or had notice of, such attempted transfer, surrender, and substitution. Subsequently the trust company assigned and delivered the Maxcy note and mortgage to the state auditor, who still has possession of them. It is not alleged for what purpose this assignment was made, except that it was made "in part, at least, for the benefit of the trust company itself." All of this was done without the knowledge of the policy holders of the insurance company.

In September, 1895, the insurance company, being insolvent, made an assignment for the benefit of creditors. Its assets, exclusive of the securities on deposit with the insurance commissioner, are almost nominal, not exceeding $5,000. In an action subsequently commenced by the insurance commissioner and one of the policy holders on behalf of all the policy holders of the insurance company, the plaintiff was appointed receiver for the purpose of converting all securities deposited with the insurance commissioner in trust for the benefit of policy holders into money and distributing the proceeds. In order to carry this purpose into effect, he was given power to take possession of all such securities, and to bring such actions as might be necessary for that purpose. He demanded of both the trust company and the state auditor a delivery to him of the Maxcy note and mortgage, and at the same time tendered to the trust company all of the securities which it assigned to the insurance company, and which the latter had deposited with the insurance commissioner. This tender did not include the securities (of the face value of $18,-000) which the insurance company itself retained, and never deposited with the insurance commissioner. Of course, neither these securities nor their proceeds have ever come into the hands of the

plaintiff.    The demand being refused, the plaintiff brought this action, alleging in his complaint his continuing willingness to restore to the trust company all of the securities which have come into his possession.

We have eliminated from this statement all the allegations of the complaint of actual fraud and fraudulent representations on part of the two companies to induce the insurance commissioner to surrender the Maxcy securities, and accept other securities in place of them, for the reason that these allegations are not essential to the plaintiff's cause of action.

The policy holders of the insurance company were the beneficiaries of the trust, and, to the extent necessary to satisfy their policies, were the equitable owners of the Maxcy note and mortgage.    They never consented to the exchange of securities.    The insurance commissioner had no authority to consent to any exchange, or to surrender the trust property, except with the consent and approval of the state treasurer, expressed in the manner provided by statute.    G. S. 1894, § 3155.    He was merely the custodian of the property, vested with the bare legal title in trust for the policy holders.    The trust company had or was chargeable with notice of these facts.

From a legal standpoint, the facts present a case where one person has unlawfully and knowingly taken the property of another, and deposited it with a third person.    The law of the case would have been the same if the two companies had feloniously abstracted the securities from the office of the insurance commissioner, and one of them had subsequently deposited them with the state auditor.

And for the same reason this is not an action to rescind a voidable contract on the ground of fraud, as counsel for the defendants argue.    The transfer and surrender by the insurance commissioner of the Maxcy securities were absolutely void.    So far as the policy holders, or this plaintiff, who sues in their behalf, is concerned, there is nothing to rescind, and the law of rescission has nothing to do with the case.    The policy holders were no parties to the arrangement by which the two companies exchanged securities and secured the surrender of their trust fund by the insurance commissioner, and the acceptance by him of something else in its place.    They are merely seeking, through the plaintiff, as an officer of the court, to recover what is and has been all the time their property.    On secur-

ing this, they are ready and willing to surrender to the trust company all of its securities which were deposited by the insurance company with the insurance commissioner. But on what principle of law or equity can they be required to make good or restore to the trust company those securities which have never come into their possession, and from which they have received no benefit. The trust company went into the transaction with its eyes open, and unlawfully dealt with property held in trust for the benefit of others. Under such circumstances it has no right to insist that it shall be made whole at the expense of the trust fund belonging to the policy holders. The plaintiff is required to do equity by returning such securities as have come into his hands, but that is upon a very different principle from the doctrine of rescission. The fact that the Maxcy note and mortgage exceeded the minimum amount of deposit required by statute (G. S. 1894, § 3332) is not material. The excess was as fully bound by the trust as the balance. Lancashire Ins. Co. v. Maxwell, 131 N. Y. 286, 30 N. E. 192.

It is contended, however, that the kind of business which the insurance company was doing was prohibited by G. S. 1894, § 3157, and therefore its deposit with the insurance commissioner was unauthorized, and could be withdrawn at pleasure. The section referred to in its original form was section 1, tit. 3, c. 1, Laws 1872, which was a codification and revision of the insurance laws of the state, the provisions of which related exclusively to fire, life, and marine insurance. Assuming, without deciding, that it prohibited other kinds of insurance, they were clearly authorized by Laws 1881, c. 123 (G. S. 1894, §§ 3331–3337, inclusive), entitled "An act to authorize and regulate within this state the business of insurance other than life, fire, and marine." We think this act is broad enough to authorize any kind of insurance that is not against good morals or public policy. Laws 1891, c. 94, § 1 (changing section 3157 to its present form), was an amendment of, and a restriction upon the operation of, the act of 1872, and was never intended to repeal the numerous acts on the subject of insurance which had been passed in the meantime since 1872. Section 3157, among others, was quoted in Seamans v. Christian B. M. Co., 66 Minn. 205, 68 N. W. 1065, cited by counsel, merely with reference to the authority of fire insurance companies.

What is said in the brief of counsel as to the standing and powers

of the receiver is predicated upon the erroneous assumption that this is an action for rescission, and is sufficiently answered by what has been already said on that subject. Aside from the possible power to receive payment at maturity, the insurance commissioner has no power except to hold the securities as custodian. He cannot administer the trust. That has to be done by the court. The court, through its receiver, is seeking to lay hold of the trust fund for the purpose of administering the trust according to law. The complaint states a cause of action.

2. The defendant Dunn, in support of his contention that the court has no jurisdiction over him, relies on a line of decisions of this court commencing with Rice v. Austin, 19 Minn. 74 (103), and ending with State v. Braden, 40 Minn. 174, 41 N. W. 817, to the effect that the courts cannot control or interfere with an executive officer of the state in his official acts. This court has undoubtedly gone further than any other in holding executive officers of the state exempt from the control of the courts in the performance of their official duties. This is especially true as to executive officers other than governor. It will be found, however, that in many of these cases what was said went further than what was decided. Whether our decisions on the subject ought to be modified, we have no occasion to consider now, for the reason that they are all clearly distinguishable from the present one. It will be found that in every one of these cases the state, as such, was interested. Some of them were suits to recover money or property from the state of which it was owner; others were brought to determine adverse claims to property claimed by the state, or to compel specific performance of the statutory contracts of the state; and still others to prevent a state officer from paying out the money of the state upon obligations of the state alleged to be void.

But this case involves only private rights in private property which is in the possession of a state officer, but in which the state, as such, never had, and never can have, any shadow of right of property. The court is not asked to compel the state auditor to perform any official act that can affect the interests of the state. All that is asked of him is that he turn over this trust fund to the court, so that it may be administered in accordance with the provisions of the trust to which it has been devoted. It cannot be that because this trust

fund, in which the state has not a dollar's interest, happens to be in the possession—and unlawfully at that—of an executive officer of the state, he can refuse to surrender the property, continue to hold it unlawfully, and thus deprive the policy holders of what belongs to them, and yet the courts can give them no relief, because an executive officer of the state is not subject to the control of the judicial department of the state government. We are confident that no case can be found in the books which goes to the extent of holding any such doctrine. Our conclusion is that, as respects the control and disposition of this trust fund for the benefit of policy holders, the state auditor is subject to the jurisdiction of the courts.

On the appeal of the trust company the order appealed from is affirmed, and on the appeal of the plaintiff the order appealed from is reversed.