## STATE ex rel. JOHN KINSELLA v. ADOLPH O. EBERHART.[1]

December 22, 1911.

Nos. 17,466—(239).

**Removal of county officer — writ of certiorari.**

Certiorari is the proper remedy to review the decision of the Governor in removing a county official from office.

**Same — specifications.**

The specifications charging relator with malfeasance and nonfeasance in the office of county attorney constitute legal and substantial grounds, and the evidence reasonably tends to sustain the decision of the Governor in removing him from office.

[1] Reported in 133 N. W. 857.

Writ of certiorari, directed to Honorable Adolph O. Eberhart, Governor of the state of Minnesota, to review his action in removing John Kinsella from the office of county attorney of Lake county for nonfeasance and malfeasance in office. The Governor appeared specially, and made return to the writ, reserving however all rights guaranteed or appertaining to the office of Governor of the state of Minnesota, and on all the records and files moved for an order quashing the writ for the reasons (1) the court did not have jurisdiction either of the subject-matter, or the person of respondent, to review the acts of the Executive of the state in relation to the matter, and (2) that certiorari is not the proper remedy, but the relator should have proceeded by quo warranto. Writ quashed.

*John B. Richards, Jr.,* for relator.

*George T. Simpson,* Attorney General, *B. F. Fowler, John Dwan* and *Alfred W. Mueller,* for respondent.

LEWIS, J.

In response to a petition filed in the office of the Governor, charging relator with malfeasance and nonfeasance in the office of county attorney of Lake county, a special commissioner was appointed under the provisions of section 2668, R. L. 1905, the evidence was taken and reported, and relator was removed from office by the Governor. Thereupon relator sued out a writ of certiorari, directed to the Governor, requiring him to return and certify to this court all the files and proceedings in the matter, to the end that his action be reviewed. Without admitting the jurisdiction of the court, the Governor complied with the order, made complete return of the proceedings, and at the hearing moved to quash the writ, on the ground that the court was without jurisdiction. The questions thus presented are: Has the court the power to review the action of the chief executive of the state in proceedings of this character? And, if it has, does the record show a legal and substantial basis for the action taken?

1. The uncertainty as to what the rule is in this state with reference to the control by the judiciary over the executive department of the government was noted in Cooke v. Iverson, 108 Minn. 388,

122 N. W. 251, and the decisions on that subject were reviewed and analyzed. That was an action to enjoin the state auditor from issuing warrants under a law claimed to be unconstitutional, and the Governor was not a party, and hence it may be claimed that what was said with reference to the chief executive was unnecessary to the decision. This makes it necessary to briefly review the history of this question, for the purpose of determining the scope of the decision in Cooke v. Iverson.

The law under consideration in Rice v. Austin, 19 Minn. 74, (103) 18 Am. Rep. 330, authorized the Governor to convey certain swamp lands to commissioners when satisfied that the commissioners had constructed the road as provided by law. The court held that this duty was imposed on the Governor in his official capacity, and the decision was based on the broad ground of noninterference by the judicial department with the executive, whether ministerial or otherwise, although, as noted in Cooke v. Iverson, the duty imposed on the Governor was not of purely ministerial character.

In State v. Dike, 20 Minn. 314 (363), the writ of mandamus was directed to the state treasurer and the secretary of state. Rice v. Austin was followed, and jurisdiction was refused, on the ground that courts could not control the actions of any member of the executive department.

The decision in St. Paul & Chicago Ry. Co. v. Brown, 24 Minn. 517, was based on the same general principle, and the court held that the duties sought to be enforced were duties belonging to the Governor as an executive, and that the court had no jurisdiction over him.

Again, in Western R. Co. v. De Graff, 27 Minn. 1, 6 N. W. 341, the action was in part to enjoin the Governor from selling certain lands, and the court applied the same principle, and Cornell, J., writing for the court said: "Every act done or attempted to be done by any officer of the executive department in his official capacity, and not in his individual capacity, is shielded from all judicial interference or control, either by mandamus or injunction, even though such act may be founded in an error of judgment, or an entire misapprehension of official duty under the law."

To the same effect [are] State v. Whitcomb, 28 Minn. 50, 8 N. W. 902, and State v. Braden, 40 Minn. 174, 41 N. W. 817.

In State v. Braden it was attempted to compel the state auditor to issue a permit to the highest bidder at a public land sale. Demurrer to the petition was sustained, on the broad ground that the courts had no jurisdiction to control the auditor in the performance of his official duties. Chief Justice Gilfillan wrote the opinion, and announced the rule as follows: "In Chamberlain v. Sibley, 4 Minn. 228 (309), it was held otherwise in respect to official acts which the court styled 'not necessarily pertaining to the duties of the executive,' and which (if the law so provided) might as well be done by one officer as another. The court, however, decided in Rice v. Austin, 19 Minn. 74 (103) that because the Constitution makes the different departments of the government distinct and independent of each other, neither being responsible to the other for the performance of its duties, neither can enforce the performance by the other of its duties; and it was also decided that where a duty, even such as may be called ministerial, is cast by law upon an executive officer eo nomine, the performance of it is an official act, although its performance might have been intrusted to some other officer. This has ever since been accepted as the law in this state, and was followed in State v. Dike, 20 Minn. 314 (363), Western R. Co. v. De Graff, 27 Minn 1, 6 N. W. 341."

The next case in point of time is Hayne v. Metropolitan Trust Co. 67 Minn. 245, 69 N. W. 916. It is important, in that it marks a radical departure from the broad principle upon which the previous decisions were based. Up to that time no distinction was made between the Governor and other members of the executive branch of the government. All stood upon the same ground, and were considered absolutely immune by constitutional segregation from judicial control. In the Hayne case a peculiar situation was presented. The state auditor declined to turn over to the court certain funds which he held in trust for private parties. Justice Mitchell expressed the views of the court, and called attention to the previous cases, and stated that this court had undoubtedly gone further than any other in holding executive officers of the state exempt from the

control of the courts in the performance of their official duties, especially as to executive officers other than Governor. But it was deemed unnecessary to consider whether the rule should be modified, since the case could be distinguished upon the ground that the state had no interest in the fund.

In Cooke v. Iverson the present Chief Justice calls attention to this change of position, and, after referring to certain cases wherein this court entertained proceedings against the secretary of state to direct him with reference to the making up of the official state ballot, says: "These election cases and the case of Hayne v. Metropolitan Trust Co. necessarily hold that such officer may be controlled by the courts in the discharge of purely ministerial duties. They well illustrate the necessity and justice of such control." This line of thought was emphasized by calling attention to the power of the secretary of state to determine whom the electors may or may not vote for, if the Constitution placed his action beyond the control of the courts. And the conclusion reached was stated as follows:

"Upon principle, and a full consideration of the previous decisions of this court relevant to the question, we hold that courts cannot, by injunction, or mandamus, or other process, control or direct the head of the executive department of the state in the discharge of any executive duty involving the exercise of his discretion; but where duties purely ministerial in character are conferred upon the chief executive, or any member of the executive department, as defined by our Constitution, and he refuses to act, or when he assumes to act in violation of the Constitution and laws of the state, he may be compelled to act, or restrained from acting, as the case may be, by the courts, at the suit of one who is injured thereby in his person or property, for which he has no other adequate remedy."

"Official duty" is no longer the criterion which absolves members of the executive branch of the government from judicial control.

The courts of last resort in this country have been radically divided on the question. As this court formerly stood, it was in line with Arkansas, Florida, Georgia, Illinois, Indiana, Louisiana, Maine, Michigan, Mississippi, Missouri, New Jersey, New York, Tennessee, Texas, and Massachusetts. The fundamental principle upon

which the decisions holding that view rest is that, under the provisions of the Constitutions of the several states, the executive and judiciary are absolutely independent of each other within the sphere of their respective powers.

This court is now in accord with the courts of last resort in Alabama, California, Colorado, Kansas, Kentucky, Maryland, Montana, Nebraska, Nevada, North Carolina, and Wyoming. In these jurisdictions, duties imposed by law upon the chief executive which are purely ministerial in their nature, and which do not necessarily pertain to the functions of the office, and which might have been imposed upon any other state officer, are subject to judicial control. Note to State v. Brooks (Wyo.) 6 L.R.A.(N.S.) 750:

The difference is radical. One line of cases recognizes no such thing as purely ministerial duties, as distinguished from political duties, and Judge Cooley's remarks in People v. Governor, 29 Mich. 320, 18 Am. Rep. 89, are often quoted in support of this line of reasoning. On the other hand, reasons of public policy and adequacy of remedy have been considered sufficient to indicate that a complete separation of the judiciary and the executive was not contemplated by the Constitution. As expressed by Justice Field in People v. Brooks, 16 Cal. 11, 40, 41: "No officer, however high, is above the law, and when duties are imposed upon him in regard to which he has no discretion, and in the execution of which individuals have a direct pecuniary interest, and there is no other plain, speedy, and adequate remedy, he can be required to perform these duties by the compulsory process of mandamus." And again, in speaking of the independence of the departments of the state government: "There is no such thing as absolute independence. Where discretion is vested in terms, or necessarily implied from the nature of the duties, they are independent of each other, but in no other case. Where discretion exists, the power of each is absolute; but there is no discretion where rights have vested under the Constitution or by existing laws."

Much controversy has arisen over the difficulty of distinguishing between so-called political or executive duties, which may be exercised in the discretion of the executive, and those which are definitely

defined to be performed in some particular manner. We realize the delicacy of the task which may be presented to the courts in some cases in concluding when jurisdiction should be assumed, but the difficulty of so doing is not conclusive that no jurisdiction lies for the purpose of determining the doubt.

It has been suggested that the judiciary should not assume jurisdiction in any case involving the action of the Governor, for the reason that the court might not be able to enforce obedience to its orders. By virtue of his position as the commander in chief of the state's military forces, the Governor might possibly successfully resist enforcement of the court's writs; but, as stated in State v. Brooks, supra, the jurisdiction of the court does not rest upon its physical ability to enforce its judgments. Jurisdiction depends upon the right of the court to hear the matter in controversy and to declare the law. The Governor, under his oath of office, is bound to enforce the law, and it will not be presumed that he would refuse to perform duties which the court of last resort declared to be imposed upon him. On the contrary, it will be presumed that in doubtful cases he would desire to be enlightened and guided by the judgment of that tribunal charged with the duty of declaring the law.

The wisdom of such a course is illustrated in the present case. Being doubtful as to the extent of the powers conferred upon him by law, as defined by the decisions of this court, the chief executive responded to the writ and moved that it be quashed, for the purpose of securing the judgment of the court.

Although the Governor was not a party to the action in Cooke v. Iverson, and the question was not directly raised, there is no substantial distinction between the Governor and other members of the executive department in the application of the principle. The Constitution imposes certain duties and powers upon the Governor, while the duties of the other members of the executive [department] are left for legislative enactment. But additional duties to those prescribed by section 4, art. 5, may be imposed on the Governor by the legislature. State v. Peterson, 50 Minn. 239, 52 N. W. 655. In either case immunity from judicial direction depends upon the nature of the act to be performed.

The distinction is marked between the nature of those duties which necessarily pertain to the office of the chief executive, as defined by the Constitution, and those additional duties which are imposed by law upon the Governor, but which might have been delegated to some other official. But it is not necessary at this time to determine whether any of the constitutional duties of the Governor may be of such a nature in their execution as to be subject to judicial review. The present case does not call for a consideration of that question. Although the chief executive was selected as the official to cause removals from office, that duty might have been delegated to some other proper official such as the attorney general. Was such duty judicial in character and subject to review by the court?

Section 2668, R. L. 1905, authorizes the Governor to remove any county attorney from office whenever it appears to him by competent evidence that he has been guilty of malfeasance or nonfeasance in the performance of his official duties, first giving to such officer a copy of the charges against him and an opportunity to be heard. Section 2669 provides that, when charges are preferred against any such officer, the Governor shall appoint a special commissioner to take and report the testimony. The Governor then has before him the evidence bearing upon the question, and he is called upon to consider it and pass judgment upon the issues presented. It is apparent, therefore, that the discretion exercised in this instance was not in the performance of an official duty as defined by the Constitution; but it does not follow that every act of the chief executive which involves the exercise of discretion is final and not subject to review by the courts.

The general test to determine whether such facts are final or subject to review is whether they are judicial or quasi judicial in their nature. In State v. Dunn, 86 Minn. 301, 90 N. W. 772, it was held that the construction and application by the state auditor of the personal property tax law amounted to the exercise of judicial functions, and that his action was subject to review. So in Minnesota Sugar Co. v. Iverson, 91 Minn. 30, 97 N. W. 454, we held that the action of the state auditor in refusing to allow certain sugar bounties was quasi judicial and reviewable by writ of certiorari. Proceedings

for the removal of a public official by the Governor are clearly of judicial character.

2. We now come to the second question, and will proceed to consider whether the Governor was justified in the action taken.

The rules by which the court is guided in such proceedings are fully stated in State v. Common Council, 53 Minn. 238, 55 N. W. 118, 39 Am. St. 595, and other cases, and it will only be necessary to briefly refer to them. It is sufficient if the charges are stated with substantial certainty, and apprise the officer of the grounds upon which the charges are based. The specifications and evidence must relate to the administration of the office—must relate to something of a substantial nature directly affecting the rights and interests of the public. Charges which directly involve the qualifications of the officer as a fit person to hold office involve the rights and interests of the public. The decision will not be reversed if there is any evidence of a legal and substantial basis reasonably tending to support it. Rulings on evidence may be considered, but a strict compliance with legal procedure is not required.

The charges are, in brief: (1) That the relator refused and neglected to advise the board of county commissioners in reference to certain specified matters; (2) that he failed and neglected, when requested by the sheriff, to prosecute violations of the liquor laws; (3) that seven indictments had been returned against the relator, for libel and for circulating obscene literature.

The statute does not authorize removal of a county attorney simply because of his ignorance of the law, for, strange as it may seem, the Constitution does not require such officers to be attorneys at law, or that they be learned in the law. State v. Clough, 23 Minn. 17. There is nothing to prevent a layman, absolutely unqualified from the standpoint of knowledge and experience, from holding the office of county attorney, and then securing the necessary legal assistance from an attorney. The statute and Constitution, however, do not justify the election and retention in office of a county attorney disqualified in other respects. The officials of the county are entitled to legal advice from that source in the performance of their duties. The prosecution of offenders against the law is placed in his hands,

and to a certain extent, at least, by virtue of his standing as the legal adviser of the county and public prosecutor, the county attorney should be a man of fair standing as a citizen and fully in sympathy with the proper administration of his office and the enforcement of the laws. The terms "malfeasance" and "nonfeasance" have no technical meaning in the sense in which they are employed. Conviction of a crime is not essential. General incompetency and neglect of duty constitute sufficient ground for removal.

We do not propose to consider each specification in detail. There is some evidence reasonably tending to show that relator refused and neglected to give personally, if he were able, or to furnish, proper legal advice for the benefit of the county commissioners. The evidence tends to show that he wholly failed to comprehend the duties required of him in the prosecution of liquor cases, and that he neglected and refused to take the proper steps to see that the laws were properly enforced. The fact that indictments had been returned against him, standing alone, did not constitute sufficient evidence of incompetency, or stamp him as an offender against the laws; but we are not prepared to state that the return of the indictments, together with the obscene pamphlet circulated by him, were not proper for the consideration of the Governor in passing upon the relator's attitude as a defender of the laws. However that may be, there was other sufficient evidence upon that point, and its introduction cannot be considered as prejudicial. The evidence in a proceeding of this character must necessarily take a wider range than permissible in a court of law under the technical rules of pleading.

While some of the instances relied on at the hearing to prove neglect of duty were not particularly specified in the petition, it does not appear that the relator was prejudiced. He was given ample opportunity to place before the Governor all the facts which might tend to explain his conduct.

Writ discharged.