KELSEY v. COGSWELL et al.

LIPSCOMB et al. v. MANHATTAN FIRE INS. CO.

(Circuit Court, N. D. Georgia. December 13, 1901.)

Nos. 1,125, 1,131.

FIRE INSURANCE—STATE DEPOSIT REQUIRED BY GEORGIA STATUTE—DISTRIBU-
TION IN CASE OF INSOLVENCY.

Code Ga. 1895, §§ 2035–2043, require fire insurance companies doing business in the state to make a deposit with the state treasurer to secure the people against loss by the operation of said companies. They provide the method by which the liability of a company for "any loss insured against" may be enforced against such deposit; and section 2041 provides that any claims of citizens of the state "for losses, or on existing policies where no losses have occurred," must be settled before the deposit can be withdrawn. Held, that the primary purpose of the deposit, under such provisions, is to secure the payment of fire losses, which are the only losses "insured against," although it also secures, secondarily, other claims arising on policies, such as the repayment, after the termination of the risk, of unearned premiums paid; that even when a company becomes insolvent, and the deposit is brought into a court of equity for distribution, fire losses are entitled to priority of payment from the fund over claims for unearned premiums.

In Equity. On exceptions to master's report in consolidated causes.

The master's report in this case shows fully the character of the case, the pleadings, the issues involved, the evidence submitted, and the conclusions reached. The report is as follows:

To the Honorable the Judges of Said Court: On the 25th day of September, 1901, his honor, William T. Newman, United States judge, referred the above consolidated cause to the undersigned, as standing master in chancery, "with direction to ascertain all of the liabilities of said company in the state of Georgia, and their priorities, if any, and other claims, if any, against said fund, and to that end all persons having such claims are hereby directed and permitted to propound the same master by statement verified by affidavit, and to submit proof as to the same, with the right to any party at interest to resist such claim by proof or other legal means. Said master is also given authority to pass upon all issues of law and fact, and the said master is hereby directed to report all testimony, and his findings of law and fact, to the court, including such debts and claims, and their priority, if any." In pursuance of said order of reference, all parties to the above-stated causes, and all parties that filed interventions in the same, were duly notified to appear before the master, and on the 9th day of October said parties, through their counsel, as shown by the minutes taken by the master, appeared and submitted their claims, with proof of same, and the questions of law involved in said causes were fully argued

thereafter by counsel representing the various claimants, and after giving the matter careful consideration the undersigned, as master, submits this, his report, to the court.

### (1) Statement of the Case. '

.The Manhattan Fire Insurance Company, a corporation of New York state, transacting business in the state of Georgia and elsewhere, was duly declared to be insolvent by a judgment of the supreme court of the state of New York, and under the statutes of said state an action was instituted in the name of the people of the state of New York to obtain a judgment dissolving said corporation, forfeiting its charter, corporate rights, privileges, and franchises. Said proceedings having been instituted the 8th day of May, 1901, and, pending said application, Otto Kelsey was appointed temporary receiver for said Manhattan Fire Insurance Company, and on the hearing of the application by the court a dissolution of the said corporation was decreed and adjudged, and said receivership made permanent. The decree and judgment of dissolution is dated the 8th day of June, 1901. Certified copies of all the above-mentioned proceedings had in the supreme court of the state of New York are of file in this court and in this consolidated cause. After his appointment as temporary receiver, said Otto Kelsey as such receiver filed the first above mentioned bill in·this court, setting forth all the proceedings to forfeit the charter of the said Manhattan Fire Insurance Company, and his appointment as receiver, and averring that suits had been filed and were threatened to be filed against said company in the state of Georgia for the purpose of securing judgments against said company, and creditors were seeking to attach the property of the .said Manhattan Fire Insurance Company in the said Northern district of Georgia, and asking that he be appointed by this court as ancillary receiver, and that all parties at interest be required to come into this court in order that there might be a harmonious and economical administration of the assets of the said fire insurance company located in the state of Georgia. On hearing the application this court sanctioned the same, and appointed· the said Otto Kelsey as ancillary receiver as prayed for, and required him to make bond in the sum of $20,000, which was duly done by him. These ancillary proceedings in this court were filed on the 28th day of May, 1901. On May 15, 1901, Frank A. Lipscomb and others, of the county of Clarke, in the state of Georgia, filed an equitable petition in the superior court of Fulton county, under the statutes of Georgia, against the said Manhattan Fire Insurance Company, alleging that said company was insolvent, and that its assets had been placed in the hands of a receiver in the state of New York, and that said insurance company had been transacting business in said state of Georgia, and had deposited with the treasurer of this state bonds of the par value of ten thousand dollars, and that said company was indebted to them and various other parties in said state, and praying that all policy holders in said company might be permitted to file their claims and interventions or become parties to the suit, and asking that a receiver might be appointed to receive from the treasurer of the state of Georgia the bonds held by him on deposit from said Manhattan Fire Insurance Company, and that said receiver might convert said bonds into cash, and hold the same subject to the orders of the court, and asking for a judgment and decree against said company, and that payment of such judgments and decrees should be paid, in whole or in part, pro rata out of said fund, according to the directions of the court. After these proceedings had been filed, and a temporary restraining order granted by the said court, the said Otto Kelsey was made a party to the same, as well as various other creditors of the said fire insurance company. Afterwards, to wit, on the 13th day of July, 1901, said last-mentioned cause was removed by Otto Kelsey, receiver, to this court, and in this court an order was duly entered consolidating said causes. All the parties to the said consolidated causes and other creditors have submitted their claims against the said insurance company to the master, and have made proof of the same. A full and complete list of said claims as proven is as follows:

Losses by Fire in the State of Georgia

As Adjusted by the Company and Presented to the Master by the Receiver and Admitted to be Valid Claims.

| No. of Policy. | Name of Claimant. | Place of Fire. | Date of Fire. | Amt. of Loss. |
|---|---|---|---|---|
| 813,613 | Dr. C. T. Stovall. | Vienna, Ga. | Jan. 22, 1901. | $ 772 63 |
| 807,572 | Valdosta Nat. B. & L. Ass'n. | Sparks, Ga. | Dec. 24, 1900. | 4 66 |
| 807,201 | Est. of Mrs. L. B. Smith. | Talbotton, Ga. | Mch. 6, 1901. | 6 00 |
| 813,153 | R. L. Reddingfield. | Carrollton, Ga. | Jan. 29, 1901. | 775 00 |
| 806,359 | R. N. Fickett Paper Co. | Atlanta, Ga. | Feb. 21, 1901. | 2,000 00 |
| 817,996 | J. J. & J. E. Maddox. | Atlanta, Ga. | Feb. 21, 1901. | 3,000 00 |
| 815,072 | Mrs. S. E. Townsley. | Columbus, Ga. | Mch. 20, 1901. | 500 00 |
| 301,014 | John W. Hall. | Newton, Ga. | Mch. 15, 1901. | 300 00 |
| 304,015 | Mrs. F. M. Hall. | Newton, Ga. | Mch. 15, 1901. | 288 33 |
| 819,055 | Inman, Smith & Co. | Atlanta, Ga. | April 1, 1901. | 116 19 |
| 806,585 | Edith E. Powers. | Atlanta, Ga. | Feby. 21, 1901. | 1,625 00 |
| 807,662 | A. W. Eakin. | Waycross, Ga. | Mch. 12. 1901. | 206 75 |
| 807,572 | Valdosta Nat. B. & L. A. | Sparks, Ga. | April 21, 1901. | 79 00 |
| | | | | $10,198 40 |

A list of adjusted claims is herewith filed as a part of the evidence in the case.

I find in favor of each of the foregoing claimants; that they are policy holders in said fire insurance company, and are entitled to a judgment for the amount of the loss set out in the above statement and in the list filed with this report.

R. L. Reddingfield, whose claim is among those adjusted by the company before the receiver was appointed, brought suit on the policy in the city court of Carroll county, suit having been filed May 13, 1901. Service was made on the local agent in the company May 14, 1901, and on September 9, 1901, a verdict was rendered against the company for $950 and costs, and on the 12th day of September a judgment for this amount was entered up. The company seems not to have made any defense. The attorney for Reddingfield claims a priority by reason of the judgment in favor of his client. The record shows that this judgment was rendered three months after the dissolution of the corporation by the judgment of the supreme court of the state of New York. The dissolution of a corporation abates suits against it, and therefore the judgment in favor of Reddingfield is a nullity, and constitutes no lien. The insured Reddingfield contends before me that his loss was $950, on account of the fire, and that he should have judgment for this amount. It appears from his own testimony, however, that the agent of the company soon after the fire and himself adjusted the loss, fixing it at $775, and he agreed to accept this amount in full payment of the loss. I therefore find and report in his favor the sum of seven hundred and seventy-five ($775.00) dollars, as it appears in the adjusted list above referred to.

Unadjusted Losses by Fire in the State of Georgia.

| No. of Policy. | Name of Claimant. | Place of Fire. | Date of Fire. | Amt. of Loss. |
|---|---|---|---|---|
| 814,101 | Adel Ginning Co. | Adel, Ga. | | $ 25 00 |
| 805,602 | P. V. & M. L. Corbine, trans-ferred to J. P. T. Austin. | Madison, Ga. | Apl. 16, 1901. | 500 00 |

I find and report that the claimants are entitled to a judgment on account of losses under their policies, which are not adjusted by the company, but which have been proven before me, for the amounts as set out in the above list.

Claim of J. P. T. Austin: Among the unadjusted claims is one held by J. P. T. Austin. The policy was issued by the company on certain property of P. V. & W. L. Corbine, in this state. The property insured was bought by the intervener, and subsequently the policy was transferred to him by the insured. The transfer of the policy was not made until after the sale and after the fire, and objection is made by some of the creditors to the validity of the policy on this ground, or, rather, to the validity of the trans-

fer. In my opinion this defense, if good at all, can only be made by the insurance company or by the receiver, and the loss is admitted by the receiver, and no objection to the transfer is made by him. I therefore find in favor of the intervener the sum of $500, being the amount of the policy, the evidence showing that the property was totally destroyed, and was valued at about $2,000 or more.

### (2) Insurance Premiums Claimed by Policy Holders.

A number of policy holders in the Manhattan Fire Insurance Company filed interventions in this cause, claiming that they were entitled to have a judgment for the amount of unearned premiums on their policies or that portion of the premium accruing after the risk terminated. They claim that this proportion of the premium should be paid to them according to the covenants and conditions of the policy. Attached to the intervention is an itemized statement or schedule of those policies, marked "Exhibit A." This schedule shows the names of the policy holders, numbers of the policies, terms of insurance, and the amount of unearned premium on each policy. These policies were all issued by the agent of the company at Cordele, Ga., and this schedule is proven by the affidavit of said agent. No objection is made as to the form or sufficiency of the verification. On the contrary, the receiver admits that the schedule attached to said intervention is a correct statement. In my opinion the interveners are entitled to a judgment in his favor for that portion of the premium accruing after the risk on the policy had been terminated by the insolvency of the company, and I therefore find and report as matter of law in favor of each one of the interveners for the amount of unearned premium shown by the schedule attached to the intervention.

The list of policy holders who are entitled to a judgment for unearned premium is quite lengthy, and I do not set forth the name of each one of the interveners in this report, but refer to the schedule attached to the intervention as furnishing the necessary information for the court and the receiver. The aggregate amount due to these interveners is $1,416.75.

### (3) Claims of Agents for Unearned Premiums Paid by Them to Policy Holders.

Intervention of B. H. Harris: This is a claim by intervener to be reimbursed the sum of $1,154.93 paid to policy holders by him out of his personal funds on account of unearned premiums on their policies. It appears from the evidence that all of these policies had been issued by the agency of B. H. Harris at Columbus, Ga., and when the company became insolvent these policy holders applied to him to pay them the amount of unearned premiums on their policies. He did this out of his personal funds, and took from each one of the policy holders a transfer of the policy, the consideration of the transfer being the amount of the unearned premium on said policy. A list of the policy holders, with number of policy, period of policy, and amount of unearned premium, is attached to the intervention and verified by the affidavit of said B. H. Harris, and it is admitted by counsel for the receiver that the verification is sufficient. I do not copy in the body of this report a list of said policies, as I do not regard it necessary, but refer to it as a part of the evidence of file in the case. I find in favor of the intervener B. H. Harris the sum of $1,154.93, being the aggregate amount paid by him to all of said policy holders to cover the unearned premiums of the policies.

Intervention of F. A. Lipscomb: This intervener was the agent of the Manhattan Fire Insurance Company at Athens, Ga., and had written a number of policies in said company on which premiums had been fully paid in cash. On the insolvency of the company and the appointment of a receiver said policy holders demanded of him the unearned premiums on the policies which he had written for them. In compliance with their demand, he paid them out of his personal fund the sum of four hundred and seventy-eight dollars and thirty-nine cents, being the amount of unearned premiums on the policies written by him, and he took from each one of the policy holders a transfer of all right and interest in and under said policy, and especially the right to that part of the unearned premium returned to the policy holder, the consideration for said transfer being in each case the amount of unearned premium on the policy. A list showing the number of

said policies, to whom issued, time, and amount of unearned premium of each policy is attached to the intervention, and verified by the affidavit of intervener. This list is filed as a part of the evidence in the case. I find in favor of the intervener the sum of $478.39.

Intervention of R. D. Gentry & Sons: Interveners were the agents of the Manhattan Fire Insurance Company located at Eastman, Ga., and claim that they had paid out to policy holders for return premiums, under policies issued by them, as agents for the defendant company, the sum of $206.81. The evidence shows that this amount was paid by them to said policy holders for return premiums, and that they took a transfer of said policies, and all interests therein, including interest in premiums from the policy holders. A list of such policy holders to whom money was paid is attached to the intervention, and referred to as a part of this report. I find in favor of the interveners the sum of $206.81.

Intervention of E. T. Gentry & Co.: Interveners were the agents of the Manhattan Fire Insurance Company at McRae, Ga. They paid to policy holders the sum of $372.33 on account of unearned premiums on policies, and took from said policy holders a transfer in consideration of said payment of said policies and all other rights and interests of said policy holders under said policies to the return premiums thereon. A list of the policy holders and the amounts paid is attached to the intervention, and referred to as a part of this report. I find in favor of these interveners the sum of $372.33.

Intervention of J. L. Riley & Co.: The evidence shows that J. L. Riley & Co. were the agents of the Manhattan Fire Insurance Company at Atlanta, Ga.; that as such agents they had authority to cancel policies, and had received express instructions from the general southern agent and manager to cancel the policies written by them in the company; that on or about May 7, 1901, they canceled all the policies written in the Manhattan Fire Insurance Company, substituting therefor new insurance which they had bought, with the amounts of the unearned premiums due to each one of the policy holders; no money was passed, but J. L. Riley & Co. simply substituted new policies for the canceled policies,—that is, new policies bought with the unearned premiums due on account of the old policies. A complete list of all policies canceled by interveners, giving number, period of insurance, amount of unearned premium paid by them, is attached to their intervention, and is proven by the testimony of J. L. Riley before me. The list is quite voluminous, and I do not incorporate it in the body of my report. I find in favor of the interveners, as against the Manhattan Fire Insurance Company, the full amount shown by this list, which they paid on account of the unearned premiums for the purchase of new insurance; this judgment to be paid by the receiver out of any assets in his hands, subject to the priorities declared by this report to exist. The amount of unearned premiums paid by J. L. Riley & Co. for which they are entitled to a judgment is $4,456.35.

Claim of Sumter Cogswell: The claimant was the general agent and manager of the Manhattan Fire Insurance Company in several states, including the state of Georgia, under a contract executed on the 2d day of January, 1900, in the city of New York, for the full term of five years, subject to termination before that time by either party, provided that on the 1st day of January of each year thereafter 12 months' notice of intention to terminate the contract be given by either party. He claims to have paid out for and on behalf of his principal, said company, to meet expenses of his department, the sum of $2,376.73. The items of expenses incurred by him are shown by vouchers introduced in evidence, but which, by agreement of all parties at interest, were not to be filed with this report, the aggregate sum above stated being accepted as correct, as shown by tabulated statement annexed as part of the evidence in the case filed with this report. In addition to this item of money actually expended by him for and in behalf of the company, he claims damages for breach of the contract for the full life of his contract, to wit, for the remaining four years of the same. I do not think the claimant is entitled to damages for the entire period claimed by him. In my opinion, on the dissolution of the corporation, and the with-

drawal of its franchises by the state that created it, its contracts of this character terminated. There was no breach of the contract prior to the dissolution of the corporation, but it is insisted that the dissolution itself, being caused by the illegal acts of the officers of the corporation, was sufficient to constitute a breach of its contract. I do not agree to this view of the law as applicable to the contract in question. By its terms it could have been abrogated by 12 months' notice by either party. But I find that when the corporation died this contract was extinguished. I think, however, that the intervener is entitled to his commission as agent as fixed by the contract from January 1, 1901, to date of the judgment of dissolution, to wit, June 8, 1901. The evidence before me is not clear or satisfactory as to what this amount should be. The agent states in his testimony that his net earnings under his contract for the year 1900 amount to $8,241.75, as shown by the books kept in his department. He states that his business for the first four months of 1901 increased 300 per cent., as shown by his books, over the business of 1900, but in his claim he takes the estimate of earnings for 1900 as a basis to arrive at the entire amount of his earnings during the four years of the life of his contract. Taking this evidence altogether, I think it is fair to allow the agent for the year 1901, from January 1 to June 8, 1901, one-half of his net earnings as determined by his earnings during the year 1900. This would give him the amount of $4,120. I find in favor of the claimant, therefore, the sum of $6,486.73, to be paid, according to its dignity and priority, out of the assets in the hands of the receiver. It is simply an unsecured debt against the company.

Claim of Atlanta Lithographing & Printing Company: Under the evidence in this case, I find in favor of this claim for $98.50, but I find under the law that it is simply a debt against the company, and has no lien on the deposit in the hands of the state treasurer, and no right to share in any of the proceeds arising from the sale of said bonds. It is simply an unsecured debt against an insolvent corporation. Under the order of reference, the master was directed to ascertain all the liabilities of said company in the state of Georgia, and their priorities, if any, and other claims, if any, against the fund or deposit made by the insolvent company in the hands of the state treasurer. The foregoing liabilities of the company accrued in the state of Georgia, all of them under policies written in said state, except the claims of Sumter Cogswell and the Atlanta Lithographing & Printing Company. The claim of Sumter Cogswell is based upon his contract as agent or manager partly in this state and partly in other states, and he elects to have his rights passed upon under said contract in this state and before this court, and there is no objection to this being done. Hence I include it in the liabilities found against the company. The main purpose of the bill filed by the receiver and that filed by the creditors in the state court, removed to this court and consolidated with the receiver's bill, is to get possession of the deposit of $10,000 in the hands of the state treasurer, and have the same converted into cash by the receiver, and paid out to the claims arising in the state of Georgia according to their priority. I have given to the question of priorities in this case a very careful consideration. The deposit made under the statutes of this state is for the protection of policy holders in this state, and no other, and, in my opinion, it is to protect policy holders as to losses insured against. It is therefore important to determine, in the first place, what is the loss insured against, and to do this we have recourse to the policy itself. The policy expressly states that the company, in consideration of the stipulations named therein, and of the premium paid, "does insure" the insured for a fixed period "against all direct loss or damage by fire" to the property named in the policy. The only loss contemplated by the policy is a loss by fire of the property named, and it is against this loss that the contract of insurance is made. It is contended by those who hold claims for unearned premiums as original policy holders, and those whose rights are acquired from policy holders, that the deposit of bonds with the state treasurer is to secure all losses accruing under the policy, whether it be by fire loss, or loss of the premiums after the risk has terminated, for the unearned portion of the premium. In support of this contention, they cite the following condition of the policy: "If this policy

shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, the company retaining the customary short rate;" and that under this clause in the policy loss by cancellation is a loss insured against. I do not agree with this view of the case. This clause is simply a covenant made by the company with the policy holder that if the company canceled the policy, or it becomes void or ceases, the company will pay the unearned premium; and it also gives the right to the policy holder to cancel the policy, and demand the return of the unearned premium. But this is no part of the contract of insurance, and until recently was not incorporated in policies of insurance. These claimants also insist that the law regulating insurance in this state contemplates other losses as well as a loss by fire, and that the deposit is to protect any loss which may occur under the policy. It was not contended, of course, that it applies to any personal claims or any other sort of claim against the company except where it occurs under the policy itself. They declare that the constitutional provision, which should be considered in the construction of the statutes passed in pursuance thereof, is broad enough to cover all losses accruing under the policy. The constitution of 1877 (article 3, § 12, par. 4) declares: "The general assembly shall from time to time enact laws to compel all fire insurance companies doing business in this state, whether chartered by this state or otherwise, to deposit reasonable securities with the treasurer of this state to secure the people against loss by the operation of said companies." The act of 1887, codified in sections 2035 to 2043, inclusive, of the Code of 1895, which is simply a re-enactment of the act of 1877, carries out this provision of the constitution, and these claimants cite the last part of section 2041 of the Code as sustaining their claims. This part of the section is as follows: "Any claims of citizens of this state for losses, or on existing policies where no losses have occurred, must be fully settled before said deposit can be withdrawn." It is not to be doubted that the deposit made under the provisions of this law cannot be withdrawn until all claims of citizens of this state against the insurance company arising on policies, whether the claim is one of loss by fire or otherwise, shall be fully settled; but this section of the Code, as well as sections 2036 and 2039, has reference to the withdrawal of the deposit by the company, and not to the payment of losses insured against. Section 2036 begins as follows: "Whenever any loss insured against occurs, the insured, in order to secure his recovery, may give notice to the state treasurer," etc. The statutory remedy to get possession of the deposit and apply it to claims of creditors is limited to losses insured against under the policy, and there can be no doubt in my mind that the only loss insured against is above-stated loss or damage by fire. It is true that the claimants for the unearned portion of the premium have incurred a loss, and, this loss constitutes a valid claim against the company and against the assets of the company; but the case we are now considering is not a case of the distribution of the assets of an insolvent corporation according to equitable or legal principles, but it is the distribution of a pledge held by the state of Georgia for a specific purpose, and, in my opinion, that purpose is primarily to protect policy holders on account of the loss insured against or loss occurring by fire. I have considered the case decided by the supreme court of Alabama (Insurance Co. v. Tardy, reported in 2 Ins. Law J. 672), and I do not think the decision contravenes the position here taken. The question then before the court was not a question of priority as between fire losses and losses of unearned premiums, but simply the right of the holders of policies to have their unearned premiums paid out of the deposit, and the right of the agent who had paid the policy holders the amount of the unearned premiums to stand in place of such policy holders. I agree with the learned court in this decision, that the deposit is in a sense security for the unearned premiums, as well as losses by fire, but I believe that under our statute the pledge or deposit is security first for the payment of losses insured against. The Alabama statute on this subject is much broader in its terms than the statute of this state on the same subject. It is "For the Protection of Holders of Insurance Policies in this State." Acts 1868, p. 590.

I therefore find as matter of law on the question of priorities that the claimants who have incurred losses by fire, as set out in the previous part of this report, have precedence over any other claims, accruing from the policies or otherwise, and that the pledge or deposit in the hands of the state treasurer, when the same has been turned over to the receiver under the orders of this court, should be converted by the receiver into cash, and the proceeds applied, after payment of proper receiver's expenses and costs, to the payment of these claims. If there should be any proceeds left after paying the claims in full, it should be applied pro rata to the payment of claims on account of unearned premiums, either due to policy holders or to those who acquired their rights from policy holders. All the evidence introduced before me, oral and documentary, is filed with this report. Respectfully submitted, this November 2, 1901.

                                   B. H. Hill, Master in Chancery.

Exceptions were filed to this report on the ground that the master erred in giving priority to fire losses over losses from what are called "unearned premiums."

Ellis & Ellis, for F. A. Lipscomb.

R. S. Johnson and Felder & Rountree, for Kelsey and Manhattan Fire Ins. Co.

J. M. Terrell, for state treasurer.

John L. Hopkins & Son, Ellis & Ellis, E. M. & G. F. Mitchell, M. P. Hall, W. B. Stovall, S. Holderness, Kontz & Austin, E. J. Wynn, and J. K. Hines, for interveners.

NEWMAN, District Judge. The only question in this case is as to the relative priority of what are called "fire losses" and losses for "unearned premiums." I think the master found correctly that the $10,000 deposited in the state treasury was so deposited mainly and primarily for the security of policy holders who sustained losses by fire, and such losses should be paid in preference to claims for unearned premiums. The only difficulty about this, and the opposing view which raises doubt, is whether, now that the company has become insolvent and this $10,000 is brought into a court of equity for distribution, it should not be distributed pro rata to both classes of claimants, as being all simple-contract creditors, without judgment or other lien. This contention has been ably presented; but, as I have stated, I think the master was correct in taking the former view. This finding seems to me to be in consonance with the statutes of the state in reference to this deposit. The machinery provided for making this fund available is all for the benefit of those who have fire losses, which indicates that this was the main purpose in the mind of the legislature for which this fund should be available. It is a loss by fire which is "insured against." Code Ga. § 2036. The argument that the provision which requires the insurance company to settle all claims on policies, whether losses have occurred or not, before it will be allowed to withdraw the bonds from the treasury (Code Ga. § 2041), has weight, but is not sufficient, in my judgment, to overcome the evident intent in the act of the legislature that this deposit should be held primarily for the protection of policy holders against fire losses.

The report of the master will be confirmed. A decree may be taken in accordance with this conclusion. The decree should also

require the delivery to the receiver of the bonds deposited with the state treasurer, such bonds to be sold, and the proceeds to be deposited by the receiver in a national bank in Atlanta, and to be paid out by the receiver in accordance with the priorities stated in the master's report.