FREDERICK A. BETTS, INSURANCE COMMISSIONER, *vs.* THE
CONNECTICUT LIFE INSURANCE COMPANY OF WATER-
BURY.

Third Judicial District, Bridgeport, October Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The charter, constitution and by-laws of an assessment insurance com-
pany, together with any general statutes applying to it, enter into
the contract between it and its policy-holders, and are to be resorted
to in determining the relative rights of its policy-holders and other
creditors in case of insolvency.

Where by these instruments separate funds are established for pay-
ment of death claims, old age benefits, and expenses, and all sums
are required to be paid into the proper fund as received, and a
certain amount of "working capital" is also required to be main-
tained for the security of policy-holders and "in lieu of a reserve,"
the policy-holders have no preference over the general creditors ex-
cept to the extent of the funds so secured to them.

Where the company has become insolvent and the working capital, re-
quired as above, appears not to have been maintained, and no part
thereof has come into the hands of the receiver, sums recovered by
him from stockholders on unpaid stock subscriptions, not exceed-
ing the prescribed amount of working capital, will be held for the
exclusive benefit of the policy-holders.

Certain funds of an insurance company were, under § 3607 of the Gen-
eral Statutes, deposited with the State treasurer in trust for the
policy-holders, the company having the right to receive the income
thereof. Upon the company's insolvency the treasurer delivered
the fund to its receiver, who is required by § 3611 of the General
Statutes to "administer the trust fund for the benefit of the
policy-holders under the orders of the court." *Held* that from
the time of the receipt of this fund by the receiver it belonged
in equity to the policy-holders, who were therefore entitled, in
the final distribution, to the income or interest accrued since such
receipt, as well as to the principal of the fund.

The charter and by-laws of an assessment insurance company consti-
tuted it a stock company, and vested the entire control in officers
chosen by the stockholders. *Held* that the policy-holders were
not liable as partners.

A court of equity, winding up a corporation by receivership proceed-
ings, has power to make an equitable application of its assets to
its debts, and to set off mutual obligations upon equitable princi-
ples. Where the receiver has recovered a judgment against an of-

ficer of the company for negligence in the performance of his duties, and the company is indebted to the officer in a less sum for salary and loans, and the judgment is not required for the payment of claims having a higher preference, the court should set off the debt against the judgment. It does not affect the duty of the court to make such equitable set-off that the judgment debtor, by failing to take the steps provided by statute (General Statutes, § 654), lost the right to have his set-off allowed in the action against him.

Argued November 1st—decided December 15th, 1905.

APPEAL by certain creditors of the defendant from an order of the Superior Court in New Haven County, *Robinson, J.*, directing how the funds in the hands of its receiver should be distributed, and denying the claims of such appellants to subrogation and set-off. *Error and cause remanded.*

*William H. Ely* and *Lucien F. Burpee*, for the appellants, Lewis A. Platt *et al.*

*Henry C. White*, for the receiver.

*Charles H. Lovett* of New York, for certain mortuary and policy claimants.

HALL, J. The appellants from the order of the Superior Court are Lewis A. Platt, Henry L. Wade, and the executors of the will of C. M. Platt, said named persons having been directors, and said Lewis A. Platt president, of said insolvent company.

In April, 1903, the appellant Lewis A. Platt filed an application in the Superior Court alleging that the New Haven Trust Company, which in 1899 had been appointed by said court receiver of the defendant company in the above entitled proceeding, had, in 1903, obtained a judgment against said applicant and one John B. Doherty for the sum of $14,280.83 (See *New Haven Trust Co.* v. *Doherty*, 75 Conn. 555) ; that said Doherty had no property from which any part of said judgment could be satisfied ; that a claim of the

applicant against said company had been allowed by the court to the amount of $9,203 ; that the assets in the hands of the receiver were insufficient to pay his claim in full. The application asked that the receiver be restrained from collecting said judgment, and that said claim of the applicant be set off against said judgment.

Upon the demurrer of said Lewis A. Platt to the receiver's answer to said application, the court held that said claim might be set off against said judgment, unless it should appear that the sum due on said judgment was needed to pay claims entitled to a preference over said applicant's claim.

Upon a hearing upon the receiver's application concerning the marshaling of assets and the preferring of claims, these facts were found by the court: The defendant insurance company, to wind up the affairs of which a receiver was appointed upon the application of the insurance commissioner, has for more than ten years been engaged, under a charter from the legislature of this State, in the business of life insurance on the assessment plan.

The assets in the hands of the receiver, and the claims allowed by the court, are :—

### Assets.

Proceeds of the sale of bonds deposited by the company with the State treasurer and surrendered to the receiver under §§ 3607 and 3611 of the General Statutes, with interest to December 28th, 1904,   15,859.74

Money derived from judgments against stockholders for amounts due on stock subscriptions, and judgments against officers and directors for negligence in management, and disposition of moneys belonging to expense fund, estimated at   30,000.00

Judgment against L. A. Platt for a tort, unaccompanied by force, (against which said Platt claims a set-off of his claim below stated of $9,203),

|  |  |
|---|---|
| | 14,280.83 |
| | $60,140.57 |

*Claims Allowed.*

Preferred claims for taxes, costs, etc.,     172.05

Mortuary claims,     44,502.78

Claims on accident policies for accidents occurring prior to receivership,     852.99

Claims on policies without an assessment clause,     2,032.22

Claims on policies in force at commencement of receivership and containing an assessment clause,     2,919.17     50,479.21

General claims for money loaned on contracts, for service of officers, agents, etc.,     93,320.34

    $143,799.55

The following are included among the general claims so allowed:

Lewis A. Platt for salary and amount due on contract     9,203.00

Henry L. Wade for money loaned and due on contract     3,456.83

C. M. Platt for money loaned and due on note and contract     48,381.24

    $61,041.07

Of the money so loaned to the company by C. M. Platt, $14,108 was used for the payment of death claims and was secured by collateral, $12,823 of the proceeds of which have been applied in payment of the sum so used, and the value

of the remainder of said collateral is estimated to be sufficient to pay the balance of the sum so used. The remainder of the sum so loaned by the appellants was used in the payment of obligations of the company chargeable to the expense fund.

Upon said application of the receiver the court upon these facts directed: (1) that from the assets in the hands of the receiver there be first deducted the sum of $2,500 for administration expenses; (2) that the accrued interest upon the fund received from the State treasurer, as well as the principal, be applied as a trust fund for the policy-holders; (3) that after deducting said amount allowed for administration expenses, all the assets remaining in the hands of the receiver be first applied to the payment *pro rata* of all valid mortuary, accident, and policy claims; (4) that after said deduction and the payment of said claims, the remainder of the assets, if any, be applied to the payment *pro rata* of all other valid claims against the company; (5) that none of the appellants, as to claims against the company, be subrogated to the rights of mortuary claimants; (6) that said L. A. Platt be not allowed to set off his claim of $9,203 for salary, etc., against the judgment recovered against him by the receiver.

No question is made regarding that part of the order which directs that the $2,500, allowed for administration expenses, be first deducted from the fund in the hands of the receiver.

The direction regarding the application of the fund received from the State treasurer, and including as a part of it the income therefrom while it was in the hands of the receiver, is correct. By statute (§ 3607) the securities deposited by the company were held by the State treasurer in trust for the policy-holders, with the right in the company, while they were so held, to "collect and receive the interest and dividends thereon." By § 3611 they were delivered to the receiver to "administer the trust fund invested in such securities for the benefit of the policy-holders . . . under the orders of the court." By the order made and the facts

found by the Superior Court the fund has, in legal effect, been applied to the payment of the claims of policy-holders as of as early a date as when it was delivered to the receiver; and he is to be regarded as having since that time held the securities as belonging to the policy-holders, and the proceeds and income therefrom as having been derived from the property of the policy-holders.

There is error in that part of the order which directs that all the remaining assets in the hands of the receiver be first applied to the payment of mortuary, accident and policy claims. Section 3 of the charter (10 Special Laws, p. 616) provides that "said corporation shall have a working capital to an amount not exceeding one hundred thousand dollars, divided into shares of one hundred dollars each, . . . with power to increase the same to an amount not exceeding two hundred and fifty thousand dollars, and may commence business under this charter when fifty thousand dollars shall have been subscribed for and paid in to said working capital, which shall be in lieu of a reserve; and said working capital shall not be reduced below the sum of fifty thousand dollars by dividends, expenses, or in any other manner, except for payments under policies or certificates in case of death or otherwise; and if said working capital shall at any time be reduced below said amount of fifty thousand dollars, then the right to issue new policies under this charter shall cease unless said working capital shall be made up to that amount within ninety days thereafter; . . . and should a valid claim at any time exist against said association, for indemnity in case of sickness, accident, old age or death, by virtue of a certificate of membership or policy issued by said association, and the funds collected by assessments and set apart as a mortuary or other fund for the payment of such claim be insufficient therefor, . . . then said working capital shall be liable for the payment of such claim, and any assets or property of said association may be taken or applied for the payment of the same."

The constitution and by-laws of the company, adopted under the authority of its charter, provide that there shall

be certain separate funds, derived from different sources, as the mortuary, the old age benefit fund, and the dividend fund, each having its separate treasurer, and each chargeable with the payment of certain liabilities; and that the secretary of the company shall pay over to the treasurers of the respective funds the money belonging to such fund, and shall pay the salaries of officers, compensation of agents, and various other expenses from the expense fund of the association.

The relative rights of the policy claimants, and of these appellants, are to be determined with reference to these provisions of the charter, constitution, and by-laws, and of the statute referred to, all of which form a part of the contract between the company and the policy-holders. *Matter of Equitable R. F. L. Asso.*, 131 N. Y. 354. In so far as such provisions subject certain assets to the payment of particular liabilities, the prior equities which may be thereby created should be considered in the application and distribution of the assets of the company under the receivership, as suggested in *Barrett's Appeal*, 75 Conn. 280; and neither § 3546 of the General Statutes, which provides that the Superior Court "may direct the application of the avails of such assets and property equitably in satisfaction of the claims proved against such company," etc., nor § 3554, directing the insurance commissioner after payment of expenses, taxes, etc., to apply the avails of the assets of a company whose charter has been repealed, "to the payment of the debts and claims allowed against such company and the surrender value of its policies, in proportion to their respective amounts," are to be construed as authorizing the court or insurance commissioner in applying such assets to disregard the equities so created by statute and by the charter and by-laws of the company.

While the appellants do not so much question that by statute, and by the charter provisions, the State treasurer fund, the mortuary fund, and, upon failure of the latter, the working capital to the amount of $50,000, are impressed with trusts in favor of the policy-holders which must be re-

garded in winding up the affairs of the company, they claim that none of the assets in the hands of the receiver belong to either the mortuary fund or the working capital, but that both of those funds have been exhausted, and that the remaining assets, excepting those received from the State treasurer, belong to the expense fund.

It is true that upon his appointment no fund came into the hands of the receiver to which the policy claimants have the right of exclusive resort. Such funds, excepting the State treasurer fund, had presumably been exhausted in the payment of claims under policies, since they could not properly have been used in the payment of expenses. Since his appointment, however, in addition to the State treasurer fund, the receiver has obtained about $30,000, a part of which is derived from judgments against stockholders for the amounts due on their stock subscriptions. The sum so received from stock subscriptions was as much a part of the working capital, and subject to its liabilities, as if paid in when the company commenced business; and as the working capital had already been reduced below $50,000, it could not become a part of the expense fund nor be used for any other purpose than payments under policies. To that part of said sum so derived from stock subscriptions, as well as to the fund received from the State treasurer, the policy claimants have the exclusive right. It does not appear that any part of the original capital enters into the other assets. The right to apply any property of the company to the payment of a death or accident claim, upon failure of the mortuary fund, gives to policy claimants only the right to demand payment from funds other than the State treasurer fund, the mortuary fund, and the working capital to the amount of $50,000, in common with other creditors.

No exception is taken to the order of the Superior Court in giving to the claims of living policy-holders, amounting to about $5,000, the same preference as that given to the mortuary claims, which amount to over $44,000.

None of the appellants were entitled, on account of money loaned by them to the company, to be subrogated to the

rights of mortuary claimants.    The only part of such money, used for the payment of death claims, has either been repaid or its payment secured by collateral.

The provisions of the charter and by-laws do not render the policy-holders liable, as partners, to the creditors of the company, as claimed by the appellants.    The insurance company was a stock company, the entire control and management of the affairs of which was in the hands of these appellants and the other officers chosen by the shareholders only.

The appellant Lewis A. Platt is entitled to set off his allowance claim of $9,203 against the receiver's claim of $14,280.83.    In sustaining the demurrer to the answer to the application for the allowance of such set-off, the court (*Shumway, J.*) decided that the applicant was entitled to the set-off unless the amount due from him was needed to pay preferred claims, and no exception has been taken to that ruling.    The later ruling of the court (*Robinson, J.*), disallowing the set-off because the amount due upon the judgment was needed for the payment of preferred claims, did not conflict with the first, but applied the law as laid down by *Judge Shumway*.

But, irrespective of the absence of any exception to such first ruling, the set-off should be allowed.    The court before which the receivership proceedings were pending had the power to allow it.    By the failure of L. A. Platt to file a complaint, in accordance with the provisions of § 654, asking such set-off to be made against said judgment by the court in which it was rendered in 1902, he was deprived of the right to have his set-off allowed in the proceedings incident to that cause.    But such failure did not deprive the court which had already taken jurisdiction of the settlement of affairs of the company by the receivership proceedings, which had itself directed the bringing of the action against Platt, and before which the question of the amount to be allowed upon the claims now sought to be set off was then pending, from allowing such set-off, by directing, as the statute (§ 3546) empowered it to, an equitable application of the

assets in the hands of the receiver " in satisfaction of the claims proved against such company."

The insolvency of the company raises an equity which, under the circumstances of this case and in a proceeding of this character, calls for the allowance of the set-off. *Goodwin* v. *Keney*, 49 Conn. 563, 569; *Carroll* v. *Weaver*, 65 id. 76, 81.

There is error, and the case is remanded with directions that after deducting the administration expenses, the fund, including principal and interest, derived from the securities received from the State treasurer, and so much of the remaining assets as are derived from judgments against stockholders for amounts due on stock subscriptions, be applied to the payment of the said mortuary, accident, and policy claims as preferred claims against said particular assets ; that said allowed claim of Lewis A. Platt of $9,203, be set off against the receiver's judgment against him of $14,280.83 ; and that the remaining assets, after such deduction, application and set-off, be applied to the payment, *pro rata*, of the remaining claims against the company, including the balance of said preferred claims remaining after said particular assets have been so applied to their payment.

In this opinion the other judges concurred.