BERTHA E. MAURER,

*vs.*

INTERNATIONAL RE-INSURANCE CORPORATION, a corporation created by and existing under the laws of the State of Delaware.

*New Castle, June 5, 1934.*

174

*Ayres J. Stockly,* of the firm of Hastings, Stockly & Duffy, and *John Biggs, Jr.,* of the firm of Biggs, Biggs & Lynch, for receivers.

*Robert H. Richards, Jr.,* Deputy Attorney General for Insurance Commissioner.

THE CHANCELLOR: There are three deposits of securities made with the Insurance Commissioner which are now

held by him and which the receivers ask that he be required to turn over to them.

One deposit was of ten thousand dollars par value of United States Treasury 3¾% bonds. This deposit was made on July 20, 1931, by the insolvent defendant. Another deposit was of eleven thousand dollars par value of Maplewood, New Jersey, Public Improvement 4¾% bonds. This deposit was made on August 22, 1930, by Public Indemnity Company, a New Jersey corporation, a company which the insolvent defendant took over and to whose business and rights it succeeded. These deposits were made under two separate statutory provisions; the first under *Chapter* 20, *Revised Code* 1915, as revised and consolidated by 37 *Delaware Laws, c.* 52 (*Section* 52), and the second under *Chapter* 20, § 57, *Revised Code* 1915 (*Section* 628), as amended by 34 *Delaware Laws, c.* 57. The statutory terms on which these deposits were made are the same in each case. Those terms are, "to be held for the benefit of the holders of the obligations of such company; said securities deposited with said Insurance Commissioner shall remain with him in trust to answer any default of such company as surety upon such bond, undertaking, recognizance or other obligation established by final judgment upon which execution may lawfully be issued against said company, said Insurance Commissioner and his successors in office being hereby directed to so receive and thereafter retain such deposit under this Chapter in trust for the purposes hereof. * * *"

There would seem to be no doubt that the "obligations of such company," referred to in the first clause of the quotation, are not its obligations generally but only its obligations of suretyship. This is evident from the phrase, "as surety," appearing in the next clause.

The third deposit was made by the insolvent defendant. It consisted of three mortgages upon real estate in the total face amount of $552,500. These deposits were made *inter alia* subject to the provisions of *Chapter* 20, §

72, *Revised Code* 1915 (*Section* 643). The assignments of the mortgages so state. The deposits were made June 27, 1932. Yet on that date *Section* 72 of *Chapter* 20 of the *Revised Code* 1915 had been repealed. The language of the assignment is "in trust for the common benefit and security of all its policy-holders and in accordance with the objects, uses, intents and purposes of the aforesaid *Section* 72, of *Chapter* 20 of the *Revised Code* of 1915 and for no other objects, use, intent or purpose." The assignment should not of course have made reference to a repealed section of the code. The substance of the repealed *Section* 72, however, has its counterpart in the revision and consolidation of the insurance laws, before referred to. 37 *Delaware Laws, Chapter* 52 (*Pages* 180 and 181), §§ 14 and 15.

A curious feature of the repealed *Section* 72 of the *Code* to which reference is made by the assignment is that while it provides that deposits may be made thereunder with the Insurance Commissioner "in trust," neither is the nature of the trust described nor are its beneficiaries designated. Yet the assignment requires that the mortgages be held in trust *inter alia* "in accordance with the objects, uses, intents and purposes" of the section. If we look alone to the section to which the assignment specifically refers for the "objects, uses, intents and purposes" which the trust was to subserve, it would be impossible to name them, for none are named therein or even so much as hinted at. The assignment, however, supplements the silence of the section in the matter of defining the beneficiaries of the trust by a provision which rests in a private contract stipulation, viz., by a provision that the mortgages shall be held "in trust for the common benefit and security of all its (the assignor's) policy-holders." Though this term of the trust finds no authorization in the section, it has a sufficient basis as a contract stipulation to give it enforceable validity. *Casualty Ins. Co.'s Case (Boston & Albany R. Co. v. Mercantile Trust & Deposit Co. of Bal-*

*timore*), 82 *Md.* 535, 34 *A.* 778, 38 *L. R. A.* 97. See also, *Lancashire Insurance Co. v. Maxwell,* 131 *N. Y.* 286, 30 *N. E.* 192. It is to be observed that when *Section* 72 was revised in 1931 (37 *Delaware Laws, Chapter* 52, §§ 14, 15), it was provided that the trust should be such as "shall be designated by the company and approved by the Commissioner." The assignment was made in 1932 and .it may be that this provision, which was then the law, was in the mind of the assignor and the Commissioner. Hence the terms of the trust were designated. But confusion of thought was apparently responsible for the reference to the old repealed section. It matters not what the explanation may be of this inappropriate reference; the trust nevertheless is effective "for the common benefit and security of all its (defendant's) policy-holders."

In all three of the deposits, therefore, we have securities held by the Commissioner upon distinct trusts in favor of specially designated creditors of the defendant; and the proposition which the receivers' petition presents is that it is not only in the power of the Court of Chancery to oust the statutorily designated trustee from his office, but that it should in its discretion do so.

Is it in the power of the court to take the administration of the trusts out of the hands of the Commissioner? There is no showing of facts which justifies the conclusion that there are no policy-holders or persons having claims based on defaults upon surety bonds, etc., for whose special benefit the trusts exist. There has been no renunciation or abandonment of the trusts by the Commissioner. No ground for his removal as trustee has been shown or even alleged. The Commissioner insists that he has no authority to turn the trusts over to general receivers of the corporation for administering. So far as the present showing discloses, the case is one where general receivers desire to oust from his office a trustee created by statute and to substitute themselves in his place.

Of course, if there were no beneficiaries to be pro-

tected by the trusts, or if the Commissioner had fully administered the trust assets and a surplus remained which belonged to the corporation, the receivers as representing the interests of the creditors generally, would be entitled to the possession and control they now seek. But there is no showing that either of those situations has arisen.

It appears to be the view of the receivers that though the event of insolvency and the consequent appointment of receivers does not destroy the trusts which have attached to the deposits, yet that event does justify the ousting of the trustee designated by the statute and the substitution in his place of the receivers. That that is their view is manifest from their admission that if the securities are delivered to them they must keep them segregated from the general assets of the estate and administer them strictly in obedience to the terms of the trusts under which they were deposited. The statutes contain no provision which justifies the view of the receivers as it is stated in the first sentence of this paragraph.

I am at a loss to discover the principle which would justify the court in entering an order the effect of which would be to turn out of his office of trustee the official whom the statute designates as the one to act in that capacity, when, so far as the record discloses, the purposes to be served by the trust remain unfulfilled and no act or conduct on the part of the trustee is shown which would warrant the substitution of another in his place.

The question here presented arose in Connecticut in *Cooke v. Warner*, 56 *Conn*. 234, 14 *A*. 798, 800. In that case there was a deposit of securities with the State Treasurer under a statute similar in substance to the statutes before the court in this case. The trust in that case was "for the policy holders of such company." Receivers in insolvency in the Connecticut case sought to take the securities from the State Treasurer for administration and distribution according to law. The Supreme Court of Connecticut denied the right of the receivers to substitute them-

selves in place of the treasurer as the administrators of the securities. In the course of its opinion it said:

"The effect of these statutes of our own and other states * * * is the creation of a trust fund in the hands of a trustee for a class of beneficiaries described with particularity,—as perfect a trust as can be created by deed or will, and as much entitled to protection from the court.

"It is elementary law that a fund cannot be taken from a trustee, in the absence of an allegation that he is wrong either in possession or in administration.

"* * * This statute (providing for the appointment of receivers upon insolvency) cannot confer upon the receivers power to disregard any existing lawful contract. They can no more compel the trustee to surrender property lawfully subjected to a trust than they can compel a mortgagee or pledgee to release without payment.

"It is of no legal significance that they aver that they intend to apply the fund for the benefit of those for whom it was created. So will the trustee."

In *McMurray v. Commonwealth*, 249 *Mass.* 574, 144 *N. E.* 718, 719, it was held that a receiver of an insolvent insurance company was not entitled to possession of securities deposited with a statutory official under a trust similar in terms to the trusts here involved. The court said:

"It is the duty of, courts to conserve and cause to be executed according to its foundation every trust of this nature. * * *

"The treasurer and receiver general (the statutorily designated trustee) is ready to continue the execution of his trust according to its terms and under the direction of the court. No ground is revealed on this record warranting his removal as trustee and the substitution of the receiver in his stead."

A receiver in insolvency of an insurance company sought in *Falkenbach v. Patterson*, 43 *Ohio St.* 359, 1 *N. E.* 757, 761, to foreclose mortgages which had been deposited with the Superintendent of Insurance of the state "as security for policy-holders." His right was denied, the court saying, "the superintendent of insurance should act and perform his trust."

In *Ruggles v. Chapman*, 59 *N. Y.* 163, a receiver for an insurance company was appointed under the general equity powers of the appointing court on the ground of insolvency. The company had deposited securities with the superintendent of insurance under a statute which provided that securities so deposited should be held "as security for policyholders." The question was presented, as stated by the Court of Appeals, of whether the plaintiff could require from the superintendent of insurance a transfer of the securities which he held in his official character. The question was answered in the negative, the court saying, "We do not perceive the authority of such a receiver to require from the superintendent of the insurance department, the surrender of a trust which has been devolved upon him by law."

The receivers cite numerous cases in support of their contention which their solicitors assert stand opposed to the principle of the foregoing authorities. One of them is the case of *Casualty Ins. Co.'s Case* (*Boston & Albany R. Co. v. Mercantile Trust & Safe Deposit Co. of Baltimore*), 82 *Md.* 535, 34 *A.* 778, 38 *L. R. A.* 97. In that case, however, the point here mooted was not presented. The treasurer of Maryland, the custodian of the securities, appears to have submitted to an order ousting him from their control. All he insisted upon was that the securities should be administered in accordance with the trust under which they had been deposited. The sole question in that case, as the discussion in the opinion shows, was whether or not the securities could be applied in disregard of the particular class of creditors for whose protection they were deposited. That the case is not to be understood as standing for the proposition that a general insolvency receiver can supplant a statutory trustee in a situation such as the instant one against his will, is manifest from a later expression from the Maryland Court of Appeals in *Vandiver, et al., v. Poe, et al.*, 119 *Md.* 348, 87 *A.* 410, 413, 46 *L. R. A.* (*N. S.*) 187, *Ann. Cas.* 1914D, 435.

In that case the court, after referring to *Casualty Ins. Co.'s Case* (*Boston & Albany R. Co. v. Mercantile Trust, etc., Co.*), *supra,* and reviewing other authorities, announced the result of the adjudications to be that "there is hardly a break in the line of decisions to the effect that receivers and assignees are not entitled to demand or obtain the possession of such securities," in the event of insolvency.

Other cases are cited by the receivers upon which great reliance appears to be placed as supporting their position. The following references and the accompanying comment will show the cases cited and why they are not to be regarded as of persuasive import. *Tuttle v. State Mutual Liability Ins. Co.*, 127 A. 682, 686, 2 N. J. Misc. 973 (in this case the power of the court to substitute its receiver for the commissioner as trustee was not passed upon, the court saying, "how and why the receiver obtained the fund is not material") ; *Phillips v. Perue,* 111 *Tex.* 112, 229 *S. W.* 849, 852 (the court said, "no question arises, therefore, as to his being improperly ousted," meaning the statutory trustee) ; *State ex rel. Hyde v. Falkenhainer, Circuit Judge,* 309 *Mo.* 381, 274 *S. W.* 722 (the commissioner was in fact administering the trust imposed upon him by statute, and the sole question was of the power of the court to control the commissioner in his conduct of the trust) ; *Van Gilder v. Parker,* 69 *Colo.* 196, 193 *P.* 664 (the Colorado statute [*Rev. St.* 1908, § 3099] distinguishes the case, in that it provides that "the court may make and enforce the necessary orders to place such securities or any part of them at the sole disposal of the court or the commissioner") ; *Wise v. Carolina Hail Ins. Co.,* 108 *S. C.* 504, 94 *S. E.* 535 (the case does not deal with the court's power. Moreover, it is doubtful if the statute under which the deposit was made, created a trust) ; *Sangamon Loan & Trust Co., Receiver, v. Peoples Savings Bank & Trust Co.,* 204 *Ill. App.* 7; *American Bonding & Cas. Co. v. Chicago Bonding & Ins. Co.,* 251 *Ill. App.* 549 (the question of the court's power to supplant the commissioner by its own

receiver, was not raised in these cases) ; *Kelsey v. Cogswell*, (*C. C.*) 112 *F.* 599, (this case arose under the *Code of Georgia* 1895, §§ 2035-2043. The statute clearly differentiates the case, because it does not create a trust to be administered by the official, the treasurer. He was made a mere custodian and creditors who obtained judgment and were unpaid are expressly authorized to apply to the court for a receiver to take charge of enough of the deposited securities to pay their respective judgments) ; *Hayne v. Metropolitan Trust Co.*, 67 *Minn.* 245, 69 *N. W.* 916 (the point was not directly involved in this case of whether the court could substitute its general receiver in insolvency for a statutory trustee in the administering of securities deposited in trust for policy holders. It appears that the insurance commissioner had unlawfully surrendered possession and control over a certain mortgage which had been deposited with him in trust, and the case was one where a receiver of the depositing company followed the security in the hands of the present holder and sought its recovery. The commissioner had as a matter of law breached his trust).

The last cited case, viz., the one from Minnesota, contains language in the course of discussion which tends to support the position of the receivers here. But the particular facts of the case and the precise question decided render the language less persuasive than it would be if the direct question had been before the court which is here present, and which was also present in the cases cited at an earlier point in this opinion upon which reliance is placed as sustaining the result in this one.

. Of course those cases in Connecticut and New York which have been decided under statutory changes enacted since the earlier cases in those jurisdictions (herein above cited) are of no significance. See *Macdonald v. Aetna Indemnity Co.*, 93 *Conn.* 140, 105 *A.* 331; *Betts v. Connecticut Life Ins. Co.*, 78 *Conn.* 442, 62 *A.* 345; *Matter of Attorney General v. North American Life Ins. Co.*, 80 *N. Y.* 152.

So long as the Insurance Commissioner functions as the trustee and administers the trust committed to him, the cost incident thereto will be kept at the minimum, because it is hardly to be conceived that he would be entitled to compensation out of the funds for acting in the performance of his statutory duty. If he were ousted and the receivers substituted in his stead, it would seem that the receivers would be entitled to compensation out of the trust assets. Even if the receivers in this case waive compensation so far as the trusts are concerned, that fact can be of no moment, because the power of the court can hardly be made dependent for its existence upon the magnanimity of the receivers. If it were a matter of discretion, the waiver by the receivers of their right to compensation would be a relevant consideration.

There are practical considerations, it is said, which make it desirable that the deposits which the Commissioner holds should be brought under the general administration of the insolvent's estate by the receivers, to the end that an equitable distribution might be made of the assets, whereby those creditors who are secured by the deposits might not be unduly favored as they might be if two separate and distinct liquidations are under way—one by the receivers for creditors generally, and the other by the Commissioner for those who are beneficiaries of the trusts committed to his management. If there be danger in this regard, it is not clear that its avoidance is impossible. No doubt a way can be found for avoiding it.

An order will be entered dismissing the petition.