BERTHA E. MAURER,

*vs.*

INTERNATIONAL RE-INSURANCE CORPORATION, a corporation organized and existing under the laws of the State of Delaware.

Appeal of Lumbermens Mutual Casualty Company, Pacific Indemnity Company and American Indemnity Company, from order of the Chancellor dated July 25, 1950.

*Supreme Court, On Appeal, January 30, 1952.*

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, Justice, sitting.

*William Prickett,* for petitioners.

*Arthur G. Logan,* of Logan, Marvel and Boggs, for Receivers of International Re-Insurance Corp., appelles.

PER CURIAM.

Certain insurance companies, claimants in the receivership proceedings below, have filed petitions in this court for leave to intervene in this cause, which is an appeal by certain other insurance companies from a decree of the court below which adjudged them not to be entitled to share in a certain trust deposit formerly made with the Insurance Commissioner of this state. The applicants stand in like position.

Appellees object on the grounds (1) that intervention may not be permitted on appeal, and (2) that the applications come too late.

The second objection is well taken. The order appealed from was entered July 25, 1950, and the appeal filed on July 31, 1950. The applications to intervene were filed on January 14, 1952, on the day of the argument on appeal. No satisfactory reason for the long delay is assigned, nor do we see any useful purpose to be served by the intervention sought. We find it unnecessary to consider the first ground.

The applications are denied.

On the Merits.

SOUTHERLAND, Chief Justice, delivering opinion of the court:

This is an appeal from an order of the Court of Chancery of New Castle County entered July 25, 1950, in the matter of the receivership of International Re-Insurance Corporation, a Delaware corporation (hereinafter called "International"). The order (among other things) disallowed the claim of certain insurance companies to share as preferred creditors in the proceeds of a deposit made by International with the Insurance Commissioner of this state in trust for the benefit of its policyholders.

The question presented is whether appellant insurance companies, as holders of obligations of International evidenced by contracts of reinsurance indemnifying those companies in respect of liability under policies or contracts issued by them to primary assureds, are beneficiaries of that trust, or whether the trust is for the benefit of International's primary assureds only.

The essential facts are these:

International Re-Insurance Corporation was incorporated in California in 1928 and qualified under the California insurance laws to carry on the business both of reinsurance and direct insurance. It made a deposit under the applicable California statute, *Political Code, Sec.* 618 "in trust for [its] policy-holders." On May 9, 1931, a Delaware corporation of the same name was formed, which began business June 9, 1931. The Delaware corporation acquired all of its predecessor's assets and assumed all of its liabilities, and later in that year the securities deposited in California were withdrawn.

Prior to October 31, 1932, International was engaged principally in the transacting of a reinsurance business and wrote very little direct insurance. On October 31, 1932, it acquired all the assets of Independence Indemnity Company, an insurance company which had engaged in direct writing, and assumed all the liabilities of that company and continued its business of direct insurance.

Early in 1933 receivers were appointed for International on the ground of insolvency, under the provisions of *Section* 3883 *of the* 1915 *Code.* They have since been engaged in winding up its affairs.

On or about June 9, 1931, International deposited with the Insurance Commissioner of Delaware $250,000 of United States Treasury bonds. It is agreed that this deposit was made "pursuant to 1915 *Code. Par.* 643 (*Chap.* 20, *Sec.* 72) or 37 *Del.L. Chap.* 52, *Sec.* 14." No provision in the Delaware insurance law required a reinsurance company to make any deposit. The first paragraph of *Section* 643 *of the* 1915 *Code* reads as follows:

"Whenever, under the laws of any other State, before doing business in such State, any corporation or association, organized under the laws of the State of Delaware, is required or authorized to make deposits of money or securities, to any amount, with the proper officers of this State, the Insurance Commissioner of the State of Delaware is authorized and directed to accept such deposits in trust, and to certify to the corporation or association making the same that he has received such deposits and the amount thereof."

Effective March 30, 1931, this statute was repealed and a substitute enacted, the first sentence of which reads as follows:

"When any insurance company is required by the laws of this State or of any state or country, or by other competent authority, to make a deposit with an insurance supervising official or other financial officer and the company desires to make such deposit in this State the Commissioner shall accept such deposit, if made in securities recognized by this law as lawful investments of the Company, and shall hold the same as Trustee upon such trust as shall be designated by the company and approved by the Commissioner." 37 *Del. L. Ch.* 52, *Sec.* 14.

Neither statute specifies the nature of the trust described nor designates the beneficiaries thereof. Under the later statute the terms of the trust are to be "designated by the company and approved by the Commissioner."

No formal written instrument or other document pur-

porting to be an original declaration or agreement of trust defining the terms of the 1931 deposit and the beneficiaries thereof has been found. There are in evidence, however, authenticated copies of five certificates issued by the Insurance Commissioner, all dated July 8, 1931, in the same form, which were filed with the Insurance Departments of the states of Iowa, Indiana, Tennessee, Missouri, and Georgia, and with the Treasury Department of the United States. A copy of the certificate is set out in the margin.[1] Other certifi-

---

1. "Certificate Relating To
The Deposit Of Securities In Delaware

"I, Jas. G. Shaw, Insurance Commissioner of the State of Delaware, charged with the supervision of insurance in the State of Delaware, and being the officer designated by the laws of Delaware to receive and hold in trust deposits of securities of insurance companies incorporated under the laws of the State of Delaware, Do Hereby Certify that International Re-Insurance Corporation, a corporation organized and existing under the laws of the State of Delaware, with its principal business office at Los Angeles, California, has deposited with me, as trustee, for the security and benefit of each and all of its policyholders and holders of its reinsurance contracts, agreements and treaties, of every kind and nature, securities recognized by the law of Delaware as lawful investments of the company, in the aggregate principal amount of Two Hundred Fifty Thousand Dollars ($250,000.00), the same being described as follows, to-wit:

"$200,000.00 United States Treasury Bonds—3-⅛%
50,000.00 United States Treasury Bonds—3-¾%

"I Further Certify that said securities are deposited and held pursuant to the laws of the State of Delaware, which, so long as the company continues solvent and complies with the laws of the State of Delaware, permits the company to collect the income on such securities and permits the company to substitute therefor other securities recognized by the law of Delaware as lawful investments of the company, provided such substitution of securities are of the amount and value required by the law of Delaware, or of such other State or country requiring such deposit to be maintained.

"In Witness Whereof, I have hereunto set my hand and affixed my official seal at the City of Dover, in the State of Delaware, this 8th day of July, A. D. 1931.

"(Signed)   Jas. G. Shaw
(Seal)                              Insurance  Commissioner"

cates of the Commissioner were issued in September, 1931, in a shorter form, which contain no statement of the terms of the deposit nor of its beneficiaries. (For convenience we shall refer to the former certificate as "the long form".)

On June 27, 1932, International withdrew the Treasury bonds on deposit with the Insurance Commissioner and on that date assigned to and deposited with him three mortgages secured by real estate in California. The first three paragraphs of one of the assignments evidencing the transfer of one of these mortgages are set forth in the margin.[2] The language specifying the beneficiaries is to be particularly noted.

Subsequently, the Insurance Commissioner issued some

[2] "That International Re-Insurance Corporation, a corporation of the State of Delaware, domiciled at Los Angeles in the State of California, mortgagee, or assignee of the mortgagee, in the indenture of mortgage hereinafter mentioned, for and in consideration of the benefits conferred by and in conformity with the provisions of Section 72 of Chapter 20 of the Revised Code of 1915, Laws of Delaware, has assigned, transferred and set over, and by these presents does assign, transfer and set over unto the Insurance Commissioner of the State of Delaware (P. O. Dover, Delaware) and his successors in office, in trust for the common benefit and security of all of its policyholders and in accordance with the objects, uses, intents and purposes of the aforesaid section, and for no other object, use, intent or purpose, a certain indenture of mortgage for the sum of Two Hundred Thousand Dollars ($200,000.00) executed by Frank R. Strong, Inc., and recorded in the office of the Recorder of Los Angeles County, State of California in Mortgage Record 8616, Page 327 to which reference is here made for a more particular description of the land conveyed in said mortgage.

"Together with the rights, members and appurtenances thereto belonging, and all its estate, right, title and interest therein:

"To Have And To Hold all and singular the premises hereby transferred and assigned, or mentioned or intended so to be, unto the said Insurance Commissioner of the State of Delaware and his successors in office, in trust, however for the common benefit and security of all of its policyholders and in accordance with the objects, uses, intents and purposes of the aforesaid Section 72 of Chapter 20 of the Revised Code of 1915 of the Laws of Delaware; and for no other object, use, intent or purpose whatsoever."

certificates evidencing this later deposit, none of which, however, set forth the purpose of the deposit or specified the beneficiaries thereof.

Sometime after their appointment, the receivers filed a petition with the Chancellor seeking an order directing the Insurance Commissioner to deliver to them the securities deposited with him in 1932. In the course of his opinion Chancellor Wolcott discussed the legal effect of the provisions of the 1932 assignments. (It does not appear that the provisions of any trust agreement relating to the 1931 deposit, or of the Insurance Commissioner's 1931 certificates in the long form, were before him.) After pointing out that the reference in the assignment to "the objects, uses, intents and purposes" of the provisions of *Section* 643 *of the* 1915 *Code* was an error, since that statute had been repealed and had been replaced by the Act of March 30, 1931, he pointed out that the statute in the 1915 *Code* contained no provisions specifying either the nature of the trust or the beneficiaries thereof. (The same comment may be made upon the scope of the provisions of *Section* 14 *of the Act of March* 30, 1931, although the latter act specifically requires the approval of the Insurance Commissioner of any trust designated by the depositing company.) The Chancellor nevertheless concluded that the assignment supplemented the silence of the statute with respect to the beneficiaries of the trust by a provision resting "in a private contract stipulation," that is, the provision that the mortgages should be held "in trust for the common benefit and security of all its (assignor's) policyholders." This provision, though lacking specific authorization in the statute, he held to have "a sufficient basis as a contract stipulation to give it enforceable validity." See *Maurer v. International Re-Insurance Corp.*, 20 *Del.Ch.* 173, 176, 174 *A.* 360. This decision was followed by the court below and is not questioned here. It appears equally applicable to the 1931 deposit, which (if we look to the language of the Commissioner's 1931 certificates in the long form) likewise erroneously made reference to the repealed *Section* 643 *of the* 1915 *Code.*

Thereafter, pursuant to proceedings under the Act of April 8, 1935, 40 *Del.L.,Ch.* 88, the Insurance Commissioner delivered to the receivers all the deposited securities, which, under the provisions of *Section* 3 of that Act, were received by them subject to any trusts, priorities and claims that might have attached to them. They were thereafter converted into cash.

On December 29, 1947, the receivers presented to the Chancellor a report and petition relating to the allowance of claims. With respect to the disbursement of the trust fund realized from the securities deposited in 1932, the receivers classified claims against the fund into two groups styled "Policyholder Claims" and "Non-Policyholder Claims." The claims of appellant insurance companies (and other like claims) were classified as "Non-Policyholder Claims." As to these, the receivers recommended that the claimants be adjudged not to be "policyholders" within the terms of the trust deposit and not eligible to share therein.

Pursuant to order and notice, the claims of appellants came on to be heard before the Chancellor, and testimony was taken and a large number of exhibits presented. Thereafter the Chancellor filed an opinion holding that the appellant companies were not entitled to participate in the distribution of the trust fund for the benefit of the policyholders of International. *Maurer v. International Re-Insurance Corp.,* 30 *Del.Ch.* 352, 74 *A2d.* 822.

The Chancellor was of opinion that the appellant company's contracts with International are contracts *for* reinsurance and not contracts *of* reinsurance, since they applied (he apparently held) to future risks only; and was further of opinion that, although a contract *of* reinsurance may be regarded as a policy, a contract *for* reinsurance may not be so regarded. Hence he concluded that appellants are not "policyholders" of International.

We think it unnecessary to discuss the soundness of this distinction, or its application to the contracts of the

appellant companies. We are satisfied that the case before us turns on a different principle, hereinafter discussed, viz.: the construction to be placed upon the terms of the 1931 deposit and the 1932 assignments, considered together. The bearing of the 1931 deposit upon the 1932 assignments was not considered by the Chancellor. It remains to determine whether the result reached was correct; if so, inapposite reasoning will not vitiate the judgment below. *Bigger v. Unemployment Compensation Commission,* 4 *Terry* 553, 53 *A.2d* 761, 767.

■ ■ The first question presented is whether the word "policyholder" in the 1932 assignments has a definite and settled meaning in the insurance business, i. e., whether its meaning necessarily includes or excludes holders of reinsurance contracts. We think it clear that the word has no such settled meaning. The word "policy" in insurance parlance is often used to include, in the broadest sense, any kind of insurance contract, and, specifically, a contract of reinsurance. See, for example, *Forsikringsaktieselskabet v. Attorney-General,* [1925] *A.C.* 639; 13 *Appleman on Insurance,* 435; *U.S.Revenue Code,* 26 *U.S.C.A.* § 1804 (c); *California Ins. Code, Sec.* 803, 1923 *Stats.,Ch.* 354, *Sec.* 1; *Florida Statutes Ann., Vol* 18, § 631.15; *Smith-Hurd Ill.Ann.Statutes, Ch.* 73, § 1009(3); testimony of Paul R. Williamson and Carl M. Hansen before the Chancellor. Many of the exhibits introduced by the claimants denominate a reinsurance contract a "policy." On the other hand, the words "policy" and "policyholder" may be used in the narrower sense and may exclude reinsurance contracts (or "treaties" as they are often called) and holders thereof in cases where it is necessary to emphasize the obvious difference between the primary obligations in the hands of the public and the obligations of the insurance companies *inter sese.* See *Aetna Casualty & Surety Co. v. International Re-Insurance Corp.,* 117 *N.J.Eq.* 190, 175 *A.* 114; *People by Van Schaick v. General Indemnity Corporation of America,* 274 *N.Y.* 510, 10 *N.E.2d* 523 (and opinion in Supreme Court); *Cunningham v. Republic Insur-*

*ance Co.*, 127 *Tex.* 499, 94 *S.W.2d* 140; *Shepherd v. Virginia State Insurance Co.*, 120 *Va.* 383, 91 *S.E.* 140; testimony of George W. Karcher and Irvin Waldman before the Chancellor. Each of the contracts of the claimants themselves is entitled "Treaty of Reinsurance."

The ambiguity inherent in the word "policy" is emphasized by the fact that the receivers concede (as they must) that the word "policyholders" in the 1932 assignments includes holders of fidelity or surety bonds, although these obligations are not commonly spoken of as "policies."

■ We must therefore conclude that the word "policyholders" in the 1932 assignments is, standing alone, ambiguous.

As above stated, the assignments (and the 1931 deposit) rest, so far as concerns the specification of beneficiaries, in private contract. Hence, to resolve the ambiguity inherent in the word we must look to the circumstances surrounding the making of these deposits, in order to determine the sense in which it was used by the parties, who were International itself and the Insurance Commissioner. *Wilmington Trust Co. v. Wilmington Trust Co.*, 25 *Del.Ch.* 121, 141, 15 *A.* 2*d* 153.

When we endeavor to place ourselves in the position of the persons concerned, we are met with considerable difficulty. Notwithstanding the efforts of able counsel to unearth pertinent evidence, the record before us is meager and unsatisfactory. The lack of any original document evidencing the 1931 deposit, the absence even of any correspondence or testimony bearing upon the matter, and the apparent inconsistency of such documents as have been found, render quite difficult the judicial task of evolving from circumstances or from conduct the intent which the law must find in the minds of the participants.

Two preliminary conclusions, however, may be stated with confidence.

First, the circumstances of the California deposit throw no light on the problem. This is so because that was a statutory deposit, and its meaning and effect are to be determined by California insurance law. If the scope of the protection of the California deposit for the protection of "policyholders" clearly included or excluded re-assureds, some inference might be drawn (as appellants indeed seek to do) that the first Delaware deposit was intended for a like purpose. We are cited to no California case construing the applicable statute. It is true that two sections of the California Insurance Code mention "policies of reinsurance," but we think this fact too weak a foundation on which to build the conclusion urged by appellants. *Sec.* 803, *supra,* and *Sec.* 9010, 1925 *Stats., Ch.* 195, *Sec.* 16.

Second, we think that none of the decided cases cited to us by the receivers and the appellants is of help. These decisions (*Forsikringsaktieselskabet v. Attorney-General, supra; Aetna Casualty & Surety Co. v. International Re-Insurance Corp., supra; People by Van Schaik v. General Indemnity Corporation of America, supra; Cunningham v. Republic Insurance Co., supra;* and *Shepherd v. Virginia State Insurance Co., supra*), all turn, at bottom, on a question of construction of a particular statute in the light of the public policy subserved thereby. No such question is here presented, because the applicable Delaware statute determines no public policy, leaving the scope of policyholders' protection under permissive deposits to be determined by agreement.

The question here is, what was that agreement?

We have carefully considered the available evidence bearing upon the question. We think the answer depends in turn upon the answers to be found to these questions, viz.:

(1) Was the 1931 deposit intended for the protection of holders of reinsurance contracts as well as holders of primary obligations?

(2) If so intended, was its scope changed by the 1932 assignments?

(1) As already noted, there is before us no document directly evidencing the terms under which this deposit was made by International and accepted by the Insurance Commissioner. The receivers argue, in effect, that some document evidencing such terms must be assumed to have been executed and delivered, since the long form of the 1931 certificates issued by the Insurance Commissioner sets forth such terms. This does not necessarily follow, but it seems highly probable. It is quite unlikely that the Commissioner assumed the authority, not conferred by the statute, to specify such terms without the assent of the depositing company evidenced in written form, or to change or expand them as written. For lack of better evidence we must conclude that the long form of certificates evidenced the terms of the 1931 deposit. From this conclusion it follows that when International made the first Delaware deposit it clearly intended to include holders of reinsurance contracts as beneficiaries of the trust, since they were specifically named as such. It is to be noted, however, that they were so named in apparent contradistinction to "policyholders"—a circumstance tending to contradict claimants' basic argument that International made general use of that term in the broad sense in its own contract.

(2) The second question above posed is the crucial one.

As before stated, International on June 27, 1932, deposited with the Insurance Commissioner three assignments of mortgages of real estate in California and withdrew the securities deposited in 1931, which consisted of United States Treasury bonds. The only documents evidencing this transaction are the assignments themselves. So much of the text of the assignment as is pertinent has been set forth above. The language particularly to be noted is that assigning the mortgages "in trust for the common benefit and security of all its policyholders." Upon the omission from this language of any mention of holders of reinsurance contracts the receivers build their most appealing argument, viz.: that International, in defining the beneficiaries of the 1931 de-

posit, had clearly used the word "policyholders" in a limited sense, in contradistinction to holders of reinsurance contracts, and must be deemed to have used the word in the same sense in the 1932 assignments. What more persuasive circumstance, say the receivers, can be found of International's intention to exclude holders of reinsurance contracts from the benefit of the 1932 deposit than the deliberate omission therefrom of the language theretofore used, i. e., "holders of reinsurance contracts"? Accordingly, say the receivers, International and the Insurance Commissioner intended to change, and did change, the terms of the existing trust by narrowing the class of beneficiaries to holders of primary obligations only.

The argument at first approach seems persuasive. But was any change intended?

First, it is to be noted that the document containing the changed language is in form an assignment only. Obviously an assignment was necessary to transfer the legal title and evidence the record title. Had a change in the terms of the trust itself been intended, it is reasonable to believe that a recital of such intent, or at the very least a reference to the prior trust as terminated, would have been included. No such recital or reference appears. A contrary inference might be drawn. The natural way to define the beneficiaries of the trust (it can be argued), if no change was intended, would be to refer to the terms of the 1931 deposit as defining the conditions under which the mortgages were to be held. As between these two inferences, we incline to the former. The change, if intended, was a vital one, since admittedly International's principal obligations were to its reinsurance contract holders. It seems unreasonable to believe that such a far-reaching step was intended from the reference to "policyholders" included in the mortgage assignments.

Second, the record is entirely consistent with the conclusion that all that was intended was a mere substitution of

collateral. Although the assignments were, in their terms, stated to be "in conformity with the provisions of *Section 72 of Chapter* 20, of the *Revised Code of* 1915," which on their date had been repealed, they must be deemed to have been received and administered by the Insurance Commissioner under the amendatory act of March 30, 1931, 37 *Del.L., Ch.* 52, *Sec.* 14, which embodies the only law authorizing such a deposit. Nothing in Chancellor Wolcott's opinion in *Maurer v. International, supra,* is inconsistent with this conclusion. That statute contains a provision (similar in effect to that in the repealed statute) permitting a company which has deposited securities thereunder to "substitute therefor other securities recognized by this law as lawful investments of the company, provided such substituted securities are of the amount and value required," etc. In a letter to the Insurance Commissioner of Pennsylvania dated February 7, 1933, the Delaware Commissioner refers to the California mortgages as having been "substituted" for other securities but makes no mention of any change in the trust itself. The withdrawn securities were Treasury bonds; the substituted securities, California mortgages. The occasion for the whole transaction may have been the desire of International, at a time of severe economic depression, to free liquid collateral and substitute real estate security, the value of which might not, at the moment, have been readily realizable. Whether this surmise is accurate cannot be known from this record; it is sufficient to say that the meager facts established are consistent with an intent to effect a substitution and nothing more.

Third, there is nothing in the record showing any reason prompting such an important change in the trust terms as the receivers assert. The burden to establish it appears to rest upon them, since they stand in the place of the company itself. The receivers suggest that in June of 1932 the company may have contemplated the subsequent expansion of its direct writing business, which occurred in late October of that year. It is admitted that the purpose of the Del-

aware deposits was to enable International to qualify to do business in other states and to comply with their requirements, as contemplated by the Delaware statutes; but the connection between the expansion of direct writing in 1932 and the asserted change in the terms of the trust is not apparent. The receivers argue that since International's intention was to conform to the requirements of such other states, the presumption is that its use of the word "policyholders" in the assignments was intended to conform to the usage of such other states. This usage, say the receivers, is evidenced by the four American decisions above cited, holding the word "policyholders," in a statute defining the beneficiaries of a statutory deposit, to mean holders of primary contracts only.

As a reason for a change in the trust terms, the argument is unconvincing, since as of December 31, 1931, International was already qualified to do business in twenty-two other states under a deposit extending protection to holders of reinsurance contracts. Why should it change its policy of broad protection "in the middle of the stream"? Moreover the argument that International intended to conform to the laws of other states meets serious difficulty in the absence of any showing of the requirements of the laws of such other states respecting the extent of the protection afforded "policyholders." Apart from the fact that three of the decisions relied on as establishing the state of the law on this question had not been handed down in June, 1932, there is no basis for the assumption that the laws of other states are the same, or that their statutes, even if similar, would receive the same construction as that announced in these decisions, nor can this court indulge in conjecture upon the subject. If the law in many states was uncertain, International may well have thought the prudent course was to confer the widest possible protection. The receivers say that no statute of any other state requires a reinsurance company as such to make a deposit for the protection of re-assureds, but it is apparently conceded that many statutes require general de-

posits for the benefit of "policyholders," and the argument thus begs the whole question. Moreover, it is in evidence that the insurance departments of several states have received and hold deposits in trust for the protection of "policyholders" from companies doing a reinsurance business only. In such a case the trust (which we must assume has the sanction of law) appears to be one for the benefit of re-assureds as "policyholders," since otherwise it would be meaningless. In one state—Iowa—in which International was qualified to write reinsurance only, it filed in 1931 a certificate of the Insurance Commissioner in the long form, upon which its right to do such business in Iowa was apparently predicated.

We think that the receivers have failed to adduce any evidence showing any reason or occasion for a change in the terms of the 1931 trust.

Finally, it appears that none of the five certificates of the Insurance Commissioner in the long form, issued in 1931 and filed with the insurance departments of Iowa, Indiana, Tennessee, Missouri, and Georgia, and with the United States Treasury Department, was ever changed, nor was any new certificate issued redefining the terms of the trust. The copies of such certificates are all authenticated in the years 1948 or 1949. The presumption is that these are the only certificates evidencing International's 1931 deposit that were ever issued to those states and to the Treasury Department. If an important change in the terms of the trust, approved by the Commissioner for adequate reasons, had taken place, it is reasonable to suppose that steps would have been taken to recall the outstanding certificates and issue new ones in appropriate language. This appears not to have been done. In the case of the 1931 certificate in the long form filed in Georgia such action would clearly have been required when, in 1933, after the purported change in the trust terms, another certificate relating to the 1932 mortgages was filed with the Insurance Commissioner of that state. Yet the 1933 certificate was entirely silent on the subject. The failure to take any such action is a persuasive circumstance tending to

confirm the intent of the parties to continue the former trust in existence and confine the effect of the assignments to a substitution of collateral only. It may also be observed that no certificates issued by the Insurance Commissioner after the 1932 assignments undertook to specify the beneficiaries of the trust; the only ones produced certify to the deposit, but not to the terms of the trust. Thus no inconsistency between the 1931 certificates in long form and the subsequent certificates is shown.

The foregoing analysis of the available documentary evidence and of the circumstances preceding and attending the execution of the 1932 assignments appears to destroy the significance of the changed language in the assignments purporting to define the terms of the trust. Standing alone, the change might be persuasive; regarded in the light of all the attendant circumstances it loses its force.

We are accordingly led to the conclusion that, notwithstanding the language in the 1932 assignments, the terms of the original 1931 deposit in trust still remained in force, and that the word "policyholders" in the 1932 assignments was intended to refer to both classes of beneficiaries entitled to the protection of the 1931 deposit. This is dispositive of the case.

For the foregoing reasons so much of the order of the court below of July 25, 1950, as is embodied in paragraphs 1, 2 and 3 thereof, classifying claims on reinsurance contracts with International as "Non-Policyholder Claims," must be reversed and set aside. The case is remanded to the Court of Chancery of New Castle County for proceedings in conformity with this opinion.