TESSIE GOTTLIEB,
Plaintiff below, Appellant,

*vs.*

HEYDEN CHEMICAL CORPORATION, a corporation of the State of Delaware,
Defendant below, Appellee.

*Supreme Court, On Appeal, November 14, 1952.*

WOLCOTT and TUNNELL, Justices, and RICHARDS, President Judge, sitting.

*Robert C. Barab*, for plaintiff-below, appellant.

*Richard F. Corroon*, of Berl, Potter & Anderson, and *Harmon Duncombe* and *George Rowe, Jr.*, of New York City, for defendant-below, appellee.

TUNNELL, Justice, delivering the opinion of the court:

This cause comes on for decision following re-argument. The opinion up for reconsideration is reported *supra, p.* 82, 90 *A.2d*

660. Reference to *supra, p.* 177, 91 *A.2d* 57, 60, will disclose that defendant was granted this re-argument for the limited purpose of showing, if it could, that the conclusions heretofore announced by the court were in contravention of the terms of *Para.* 2046, *Revised Code of Delaware* 1935.

In connection with the re-argument, however, plaintiff has urged that this statute which was assigned as the subject of the re-argument[1] should, nevertheless, not be given consideration, because the defendant, by waiting so long to raise it, has lost the right to do so.

■■ First, it is charged that defendant waived the statutory defense by failing to call it to the attention of the trial court, and, in this connection, plaintiff points to three decisions in which this court refused to consider arguments raised for the first time on appeal: *Equitable Trust Co. v. Gallagher,* 32 *Del.Ch.* 401, 77 *A.2d* 548; *Trout v. Farmers' Trust Co.,* 19 *Del.Ch.* 437, 168 *A.* 208; and *Stephenson v. Commonwealth & Southern Corp.,* 19 *Del.Ch.* 447, 168 *A.* 211.

In all three of the cited cases, however, it appears that what this court refused to do was to consider some ground of alleged *error* which had not been brought to the attention of the trial court. It is the law that while allegations of error which were never called to the attention of the trial court may not thereafter be relied upon to support an appeal, nevertheless, a reason for sustaining the judgment, if based upon the record sent up, may be urged for the first time in the appellate court. 5 *C.J.S., Appeal and Error,* § 1464, *page* 72; *Bigger v. Unemployment Compensation Commission,* 4 *Terry* 553, 558, 53 *A.2d* 761, 767; *Maurer v. International Re-Insurance Corp.,* 32 *Del.Ch.* 447, 86 *A.2d* 360, 365. It cannot, of course, be contended that a statute is not in the record. If this statute is applicable, therefore, and its effect would be to support the judgment, the failure to urge it below will not preclude it here.

■ But, overlooking the omission in the trial court and accepting the proposition that defendant could have raised this

---

[1] Granted to petition without oral argument or briefs.

statute by timely reference to it in the appeal, plaintiff still says it came too late. This second objection is based upon the fact that the statute was not mentioned in defendant's original argument in this court, nor even in its original petition for re-argument, but appears for the 'first time in a proposed amendment to the petition for re-argument. As authority for her view, plaintiff cites this dictum out of our recent opinion in *Kerbs v. California Eastern Airways, Inc., ante p.* 174, 91 *A.2d* 62, 63:

"Since the appeal has been fully argued and carefully considered under one theory, it might well be questioned whether review by way of re-argument upon a different theory should be permitted, unless circumstances afford a reasonable excuse for the failure initially to clearly present the different theory."

We consider the situation now before us, however, to differ materially from the one in the *Kerbs* case.

Bearing in mind this reference by Justice Wolcott to an exception to the general rule, let us, therefore, recall the circumstances attending the present appeal. In the trial court both parties pressed for summary judgment. Defendant was awarded such a judgment. In this court both parties agreed that summary judgment was the proper form of final order for the Court of Chancery to have entered; they differed only as to who was to be awarded that judgment. Neither party ever lent the slightest encouragement to any disposition the court might have displayed toward remanding the case for trial. Nevertheless, the court, exhibiting the obstinacy which is one of the prerogatives of the bench, ultimately filed an opinion that trial would be required. Faced with the prospect of a trial—a solution injected into the case by the court—plaintiff says that defendant should all the time have anticipated such a turn of events and should have cited the statute "*arguendo*".

It would, of course, have been in order for defendant to press this statute as an alternative argument. Such alternative contentions are constantly made, and, indeed, in the usual circumstances they must be made at the time appointed for argument, or they are waived. But it is also the common practice for good lawyers, in defending a judgment in their favor, to do no more than to meet the arguments raised by the appellants, without assum-

ing the added burden of anticipating all the alternative courses the court might adopt on its own initiative. If it is within our powers to remand the case for trial, which no one will deny, and thereby to give plaintiff a substantial advantage which her counsel has not expressly sought, then we must possess the corresponding discretionary power to allow the defendant to meet the new situation thereby created.

We agree with plaintiff that this statutory argument should have been raised at least in the original petition for re-argument, instead of in an amendment, and so, of course, does defendant. But defendant, having omitted a point which it now believes to be important, moved promptly to correct its omission. The motion to amend the petition was made prior to the court's consideration of the problem of re-argument, and neither the plaintiff nor the court has suffered any inconvenience by reason of the delay. Plaintiff's immediate objection, therefore, is ultimately reducible to the general disfavor of permitting any disagreeable factor, once overlooked, to be injected into a case thereafter. Her argument, if rigorously applied, would eliminate all important amendments to anything.

We conclude that the present circumstances accord defendant a "reasonable excuse" for its failure initially to cite the statute, and we do not regard its omission from the original petition for re-argument as fatal. Accordingly, we reaffirm our original decision to consider the petition for re-argument as amended so as to include reference to the statute.

Proceeding now to the merits, we see that defendant first points to the first paragraph of 2046 of our 1935 *Code*, which is as follows:

"Subscriptions to, or the purchase price of, the capital stock of any corporation organized or to be organized under any law of this State may be paid for, wholly or partly, by cash, by labor done, by personal property, or by real property or leases thereof; and the stock so issued shall be declared and taken to be full paid stock and not liable to any further call, nor shall the holder thereof be liable for any further payments under the provisions of this Chapter. And in the absence of actual fraud in the transaction, the judgment of the directors, as to the value of such labor, property, real estate or leases thereof, shall be conclusive."

Defendant relies upon the last sentence of the above-quoted paragraph. Its reasoning is that the directors of defendant formed

a "judgment" that the value of the services of the several optionees during the periods for which they were required to remain in defendant's employ in order to earn the right to exercise the options, plus the $18–7/8 per share which the optionees would have to pay for the stock, would in each case be a fair exchange for the stock. The services to be rendered, plus the $18–7/8, taken together, make up the price of the stock. Therefore, what we have here, says defendant, is simply such an act of valuation of services to be taken in exchange for stock as the statute operates to render conclusive in the absence of actual fraud.

Defendant, in order to maintain the above contention, must argue that the present transaction is nothing more than a "subscription for stock", or a payment of the "purchase price" of stock, in the language of the statute. The whole transaction, it says, is reducible to a simple continuing offer to sell stock. Thus, there is no consideration for the option apart from the price of the stock, it says, pointing out by way of illustration that under the tax laws, a purchaser of stock under an option is permitted to add what he pays for the option to what he later pays to acquire the stock in order to make up a single figure, which represents the amount of his investment. Defendant assumes that the cost of a given investment includes nothing more than the "purchase price" thereof.

Further, defendant insists that there can be no consideration apart from the price of the stock, because unless the optionee buys the stock, he gets nothing. Thus, defendant's counsel say:

"As has been previously pointed out, the option agreements in the present case are, from a legal point of view, offers to issue and sell stock for consideration in the form of cash and labor required to be done, and confer nothing of value upon the optionees except to the extent that the transaction may be consummated by the purchase of stock."

Defendant reasons that because an option ultimately produces no profit for the optionee unless it is exercised, therefore, unless eventually exercised, it never had any value at any time.

What has happened, under defendant's present theory, to the contractual aspects of the option agreements? The court permitted

defendant, at an earlier stage of this appeal, to seize upon the necessity for the optionees to remain with the company as the factor supplying consideration for the option. Now defendant insists that this same retention of services is merely a part of the price of the stock, thus seeking to bring all the consideration there is in the case within the purview of the statute. Such a theory not only departs from the terms of defendant's earlier argument, as previously considered and adopted by this court—a result which would alone be fatal—, but denies all meaning to the following covenant appearing in the several option agreements:

"The employee may exercise the option granted hereunder with respect to —— shares, in whole or in part at any time between Jan. 1, 1952, and March 13, 1958, inclusive; with respect to an additional —— shares, in whole or in part at any time between July 15, 1953, and March 13, 1958, inclusive; and with respect to the remaining —— shares, in whole or in part * * *."

■ Defendant has failed to acknowlege the difference between a continuing offer to sell and an agreement to keep that continuing offer open for a specified term without changing the price. What we have to consider, of course, are two contracts, not one. There is an option contract, and there may be a purchase and sale of stock. Each of these contracts must, of course, possess its own consideration. *Rosenthal v. Burry Biscuit Corp.*, 30 *Del.Ch.* 299, 60 *A.2d* 106; *Kerbs v. California Eastern Airways, ante p.* 69, 90 *A.2d* 652, 656.

Professor *Corbin's work on Contracts, Vol. 2, p.* 707, contains a discussion which, though used by the author in a different connection, is useful for our present purpose:

"The difference between price and consideration is perhaps even more obvious in the case of an option contract. In return for $50 in hand paid, the seller promises to transfer land or goods on payment of $1,000 by the buyer within 30 days. This is a unilateral contract, the buyer having the "option" between paying and not paying, and having made no promises. Here, the consideration is not the price of his land or goods; the price is $1,000. And the payment of that price is a condition of the seller's duty to transfer, although it is not the consideration for his conditional promise to transfer." See also 17 *C.J.S., Contracts*, § 100, *page* 450.

■ Careful consideration of this matter, therefore, brings us back precisely to our first view. Retention of services is here intended to be the consideration for the option contract, and cannot

be passed off simply as the price of the stock so as to bring it within the first paragraph of the statute. This statutory language is designed to apply, not to the consideration for an option agreement, but to the price of stock.

■ Next, defendant turns to the last portion of 2046 of our *Code*, which deals with options, to be sure, but not in such a way as to relate to the present problem. This portion of the statute confers upon the board the general power to grant options for stock. While the first portion of this statute would, in the absence of fraud, operate to make the judgment of the directors final as to the purchase price of stock, nothing in the statute purports to make their judgment in respect to the consideration for an option conclusive in the absence of fraud or on any other terms. What it says is simply this:

"The terms upon which, the time or times, which may be limited or unlimited in duration at or within which, and the price or prices at which any such shares may be purchased from the corporation * * * shall be such as shall be fixed * * * in a resolution * * * adopted by the Board of Directors * * *"

Nothing in the latter portion of *Para.* 2046, therefore, conflicts with the conclusions reached upon analysis of the first paragraph.

The one aspect of the statute so far treated in this opinion is dispositive of the entire statutory issue. It is, therefore, not necessary to consider the second question propounded by the court in the opinion allowing re-argument, nor the other aspects of the statute brought into the argument by the ingenuity of able counsel. Without passing upon any question as to whether this statute applies to judgments which the directors have formed in respect to services not yet rendered, or whether the statute does more than to state the law which would apply in the absence of statute, or whether the language of the stipulation which we quoted and considered in our first opinion squarely rules out any possibility of actual fraud in the valuation of the services, or, indeed, without expressing any other view upon any other aspect of the statute except to interpret it so far as we must in order to see whether it here applies, we conclude that 2046, Revised Code of Delaware 1935, does not so apply and in no way affects the reasoning or the result of either of our previous opinions.

At this point the appeal would be concluded if counsel for the defendant had not raised a different question, giving it a peculiar twist in an attempt to relate it to the statute, so as to bring it within the limitations imposed by the court upon the re-argument.

■ Defendant urges that application of the statute against the plaintiff would be "wholly equitable", because it says the plaintiff at the argument waived any right to prove the inadequacy of consideration for the options. This argument, when reduced to principle, obviously is based on "waiver" and has no particular relation to the statute at all. Yet it reaches to the very root of plaintiff's present rights and would undoubtedly be raised in the Court of Chancery at trial, and might yet become the subject of further proceedings before us. Such being the case, and the point having been thoroughly argued, we feel it our duty, *ex mero motu*, if not otherwise, to consider the matter now. See *Cheever v. Wilson*, 9 *Wall.* 108, 76 *U.S.* 108, 19 *L.Ed.* 604, 608.

■ Going to the record to resolve the question, we find that when this case came before the Chancellor for argument on the cross-motions for summary judgment, he interrogated counsel to learn what they regarded as the genuine issues in the case. The colloquy which ensued clearly indicates that at that stage of the proceeding the Chancellor had in mind the very problem which we have found is still to be settled.

The heart of the discussion at the argument was this:

Mr. Duncombe: * * * "I don't know that plaintiff, even if he were free to do so at this stage of the proceeding, would want to start a trial on the aggregate remuneration of these officers. That is a very hard case to try * * *."

The Court: "Well, that may be, but I am studying a case involving that, and I thought * * *."

Mr. Barab: "If I may interrupt, since your question is really directed at plaintiff, we are going to be of no help to you in your other case. That issue is not involved here."

The Court: "I see. That should make the defendant's attorney happy."

Plaintiff's counsel has argued to us that he distinguished cases of "aggregate remuneration"—where it is charged, as in *Rogers v. Hill*, 289 *U.S.* 582, 53 *S.Ct.* 731, 77 *L.Ed.* 1385, that the amount

paid an employee is such an outrageous sum of money as to constitute waste of assets—from cases like this, where the essence of the matter is that, whatever else the man might have been paid, whether much or little, the option here conferred upon him is alleged to be worth disproportionately more than the value of retaining him with the company for the periods required under the option agreement.

There would clearly be different forms of questions and somewhat different patterns of proof in the two types of cases, though it would seem to us that it might be difficult, if not impossible, to prevent a trial of either type of case from evolving ultimately into a problem involving "aggregate remuneration". But the pleadings clearly raise an issue as to the sufficiency of the consideration for the options, and in our view something more than an uncertain discussion of the kind relied upon here would be required to constitute a record withdrawal of the right to rely upon that issue. Accordingly, we are constrained to treat plaintiff here as we have already treated defendant in its attempt to raise the statute, and as we treated defendant in raising this very point of waiver. What we say is repetitious, because the same basic difficulty which we previously encountered permeates every phase of this re-argument. The entire conduct of the action, on both sides, has been conditioned by the complete confidence of each party that she, or it, as the case may be, would ultimately obtain summary judgment. We feel that we must consider the omissions of defendant and the uncertain assurances of plaintiff similarly, not as abstract single episodes, but in perspective, in their relation to the circumstances surrounding counsel at the time.

Nor do we see any element among these facts, such as a binding agreement between the parties, to prevent plaintiff, on a remand for trial, from reconsidering the manner of presenting her case and relying upon any well-pleaded allegation which she formerly regarded as unimportant, but which she may now have come to regard as essential to proper proof of her case. *Moulor v. American Life Insurance Co.*, 111 *U.S.* 335, 4 *S.Ct.* 466, 28 *L.Ed.* 447.

We conclude that plaintiff has not waived the right to prove, if she can, that the relationship between the value of the options

granted and the value of the services to be rendered as consideration for those options is so disproportionate that reasonable businessmen would not differ in their condemnation of it as an unfair bargain.

The judgment of the Court of Chancery will be reversed and the cause remanded for trial.